290 So.2d 533 (1974)
BARNETT BANK OF PENSACOLA, Formerly Known As the First Bank & Trust Company of Pensacola, Appellant,
v.
Dorothy C. FLETCHER, As Administratrix of the Estate of Henry Lamar Fletcher, Deceased, Appellee.
No. S-283.
District Court of Appeal of Florida, First District.
February 19, 1974.
*534 Bert Lane of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Thomas N. Tucker, Pensacola, for appellee.
SPECTOR, Judge.
Appellant seeks reversal of a final judgment holding that it is not a secured creditor of the estate of Lamar Fletcher, of which estate appellee, his widow, is the executrix. Appellant assigns this ruling as error.
On January 3, 1969, Henry Lamar Fletcher and the bank entered into an agreement for the extension of a line of credit and executed an agreement with appellant's predecessor. The agreement was designated a security agreement and expressly provided under the heading that the instrument was to secure "accounts receivable and contract rights". Paragraph three thereof is as follows:
"3. As security for the payment of all loans and advances now or in the future made hereunder and for all Borrower's liabilities, including any extensions, renewals, or changes in form of any thereof: (a) if the office where Borrower keeps its records concerning its accounts and contract rights is in this or any other state in which the Uniform Commercial Code is in effect, Borrower hereby assigns to Bank and grants to Bank a security interest in: (i) all accounts owned by Borrower at the date of this agreement; (ii) all accounts at any time hereafter acquired by Borrower; (iii) all Borrower's existing contract rights and all of Borrower's contract rights which come into existence at any time hereafter; and (iv) all proceeds of all such accounts and contract rights; ..." (Emphasis added.)
On July 30, 1969, the bank filed with the Secretary of State of Florida a financing statement setting forth the security interest of the bank in the accounts receivable and contract rights of Henry Lamar Fletcher.
On November 11, 1970, Fletcher borrowed some $7,500.00 at nine percent interest pursuant to the line of credit arrangement. As evidence of the loan, Fletcher executed a collateral note containing the following provision:
"Bank is hereby given a lien upon and security interest in all property of each Obligor now or at any time hereafter in the possession of Bank in any capacity whatsoever, including but not limited to any balance or share of any deposit, trust, or agency account, as security for the *535 payment of this note, and a similar lien upon and security interest in all such property of each Maker as security for the payment of all other liabilities of each Maker to Bank (including liabilities of each Maker and any other person); and Bank shall have the same rights as to such property as it has with respect to the collateral."
Fletcher died on November 21, 1970, and appellee was appointed executrix of his estate. Subsequent to her appointment as executrix, appellee collected accounts receivable on amounts that were due on contracts which had been substantially completed before Mr. Fletcher's death. The trial court found that the value of work done under the construction contracts amounted to more than the sums due to appellant under the note dated November 11, 1970.
The trial court held that the general language in the documents executed by Mr. Fletcher is not sufficient to give the appellant standing as a secured creditor and thus no priority over the sums in the account of appellee as the personal representative of the deceased debtor.
Appellant contends that the security agreement entered into by it and the decedent amply identifies the collateral as to which it has a security interest. We agree. There is no question but that Mr. Fletcher agreed to and did give the bank as security for the payment of all loans, including the $7,500.00 item of November 11, 1970, all accounts owned by Fletcher acquired by him after execution of the security agreement by paragraph 3(ii) thereof and all existing contract rights and all such rights which came into existence after the agreement by (iii) thereof. Additionally, subsection (iv) gave appellant a security interest in all proceeds of all such accounts and contract rights. The sums collected by appellee were clearly "proceeds" within the meaning of (iv) above. Section 679.306(1), Florida Statues, F.S.A.
No authority is cited by appellee to support the contention that the language contained in the security agreement initially entered into by the parties or the language of the collateral note executed on the date of the $7,500.00 loan are too general to be given the efficacy intended by the parties. To the contrary, appellant persuasively argues that the comment found under Section 679.9-204, Florida Statutes, F.S.A., which provides in subsection (3) for a lien on after acquired property, recognizes the lack of need to specifically identify accounts receivable in which a creditor has a security interest, viz:
"... Notice that the vexed question of assignment of future accounts is treated like any other case of after acquired property: no periodic list of accounts is required by this Act. Where less than all accounts are assigned such a list may of coarse be necessary to permit identification of the particular accounts assigned."
It seems clear that the legislature eliminated whatever need may have earlier existed for specifically listing accounts receivable in security instruments when it enacted the Uniform Commercial Code as the law of this jurisdiction. Accordingly, we hold that appellant does have a security interest in the sums collected by appellee on the accounts or contract rights of the decedent. It appearing from the record and the stipulation of appellant appearing in its brief that the sums so collected are sufficient to satisfy its claim against appellee, it is therefore not necessary for the court to discuss the remaining question raised by appellant.
Reversed.
RAWLS, C.J., and JOHNSON, J., concur.