**In re SOJACK MILLER, INC., Debtor.**

**Bankruptcy No. 87–6661–BKC–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 1, 1988.

Shirley C. Arcuri, Straske, Farfante, Segall & Arcuri, P.A., Tampa, Fla., for debtor.

Sara Kistler, Tampa, Fla., U.S. Trustee.

## ORDER ON MOTION TO DETERMINE EXTENT AND VALIDITY OF LIENS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion filed by Sojack Miller, Inc. (Debtor), who seeks a determination of the priority, validity and extent of liens of James E. Brown and Mayme Brown (Browns), the United States

Government/Internal Revenue Service (Government) and O. Sanford Jasper, the Tax Collector of Pinellas County (Tax Collector). At the duly scheduled hearing on the Motion filed by the Debtor, the parties, the Browns, the Government, and the Tax Collector all failed to present or to place into evidence any documented evidence supporting their respective positions. However, the documentation supporting the respective claims is a part of the record as attachments to the parties' proofs of claim filed with this Court, therefore, these documentations will be considered.

The Debtor concedes that the Tax Collector has a valid and enforceable property tax claim which should be paid out of the proceeds of the sale. It also conceded that the tax lien is superior in rank to the liens of the Government and of the Browns. The controversy revolves about the respective lien position of the Government versus the lien position asserted by the Browns.

The undisputed facts relevant to the issues under consideration are as follows:

At the time relevant, the Debtor was the owner and operator of a pharmacy in combination with the operation of a grocery store. On July 6, 1977, the Debtor and the Browns entered into a security agreement whereby the Debtor granted a security interest to the Browns in collateral described as "all of the Debtor's inventory, equipment, fixtures, name (Warren's Pharmacy) and goodwill." The Security Agreement was filed on December 4, 1986, with the Secretary of State in Tallahassee, Florida, in lieu of a UCC–1 financing statement. It appears that on November 23, 1987, the IRS placed on public record in Pinellas County, Florida, a notice of the tax lien claiming to secure a tax obligation of the Debtor in the amount of $54,171.72.

On December 9, 1987, the Debtor filed its Voluntary Petition for Relief under Chapter 11. In due course, the Debtor filed a document entitled, "Report and Notice of Intention to Sell Property of the Estate." The Report and Notice stated the Debtor's intent to sell the customer record files of the Debtor, its drug inventory and pharmacy computer to MacMillan Pharmacy, Inc.

The Debtor sought to sell the assets scheduled free and clear of any liens and encumbrances with the proviso that the liens claimed by the Government and the Browns shall be transferred to the proceeds of the sale. The Debtor concedes that the proposed sale would not produce sufficient funds to satisfy the lien claims of the Tax Collector, the Browns and the Government, but contends that this is the best possible offer which could be obtained and the price offered by the prospective purchaser is fair and adequate. Based on this, on September 2, 1988, the Debtor filed a Motion and sought an order to determine the disposition of the proceeds and sought a determination of the extent and validity or priority of the liens of the Government and the lien claimed by the Browns. On September 6, 1988, this Court entered an Order approving the sale including the sale of the customer record files, the drug inventory and the pharmacy computer to MacMillan Pharmacy, Inc., free and clear of liens of the Government, the Tax Collector and the Browns. The Order provided, however, that the liens asserted by the parties shall be transferred to the proceeds and be paid to the extent the same are found to be valid.

At the duly scheduled hearing on the Motion, the argument of counsel for the respective parties focused on the question of whether or not the security interest granted by the Debtor to the Browns would validly encumber the customer records maintained by the Debtor in its pharmacy operation in addition to the tangible assets sold by the Debtor.

It is the contention of the Government that the Security Agreement did not adequately describe the customer lists as collateral, and, therefore, any interest the Browns may claim never attached to the customer lists. In opposition, it is the contention of the Browns that their security interest extends to the entire proceeds from the sale by the Debtor, including the proceeds from the sale of the customer lists. In support of their claim, the Browns

contend that customer lists are implicitly included in the definition of "goodwill", which was specifically listed in the Security Agreement, and thus, the term "goodwill" adequately describes customer lists as part of the collateral in which the Debtor granted a security interest.

The initial inquiry in resolving the issue raised must, of course, be focused on the legal sufficiency of the description of the collateral set forth in the Security Agreement. It is now generally recognized that a description of collateral is sufficient if it covers *all* of a certain type of asset or less than all of a type of asset if those items which are encumbered are specified. *See In the Matter of Munzenreider Corp.*, 34 B.R. 82 (Bkrtcy.M.D.Fla.1983); *Barnett Bank of Pensacola v. Fletcher*, 290 So.2d 533 (Fla. 1st D.C.A. 1974). Specifically, *Fla.Stat. 679.402(1)* provides that a description in a financing statement is sufficient if it "contains a statement indicating the types or describing the items of collateral." Further, under Florida law, a description of personal property in a security agreement is "sufficient whether or not it is specific if it reasonably identifies what is described." *Fla.Stat. § 679.110 (1987)*. Clearly, the purpose of requiring a sufficient description of the collateral and of the filing system in general is to give notice to the world that a security interest exists on particular property of the Debtor. *See In the Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir.1981).

The description of the collateral in this instance is clearly adequate, simply because one can reasonably identify the collateral, including "goodwill". The question still remains, however, whether or not the term "goodwill" would include customer lists, or if one desires to have the security interest granted to extend to the customer lists, the Security Agreement and the UCC–1 must specifically so state. Neither research of parties nor independent research disclosed any cases finding specifically that a security interest in "goodwill" includes customer lists. However, common sense dictates that customer lists generally are the very essence of "goodwill" and have been construed as such by several courts. *See Houston Chronicle Publishing Co. v. United States*, 481 F.2d 1240 (5th Cir.1973); *In the Matter of Roman Cleanser*, 802 F.2d 207 (6th Cir.1986). This is especially true when the goodwill relates to the operation of a pharmacy. This is so because the most significant economic benefit of a pharmacy operation is derived from the refilling of prescriptions, which, of course, could not be accomplished without the availability of the customer lists.

Based on the foregoing, this Court is satisfied that the Browns have a valid security interest in the proceeds from the customer lists sold by the Debtor.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Determine Extent and Validity of Liens be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Tax Collector of Pinellas County is hereby entitled to a first priority position as to the proceeds from the sale. It is further

ORDERED, ADJUDGED AND DECREED that the Browns are hereby entitled to a second priority position as to the proceeds from the sale. It is further

ORDERED, ADJUDGED AND DECREED that the Government is hereby entitled to a third priority position as to the proceeds from the sale.

DONE AND ORDERED.