**In re WAK LIMITED, INC., Debtor.**

**Bankruptcy No. 92–11499–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Nov. 11, 1992.

Susan D. Lasky, Law Offices of Raymond B. Ray, Fort Lauderdale, Fla., for debtor.

Richard A. Morgan, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, Fla., for Telerent Leasing, creditor.

## ORDER ON MOTION FOR PAYMENT OF ADMINISTRATIVE CLAIM RE: TELEVISIONS

A. JAY CRISTOL, Bankruptcy Judge.

This matter came before this Court for consideration on September 24, 1992, upon Telerent Leasing Corporation's ("Telerent") Motion for Payment of Administrative Lease Claim and the Court Order Scheduling Evidentiary Hearing to determine whether the Telerent's documents are leases or financing devices, and the Court having heard the testimony, examined the evidence presented, considered the arguments of counsel, and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law:

On September 8, 1988, Telerent entered into a Lease Purchase Agreement (the "Lease") with debtor whereby Telerent agreed to furnish two hundred color remote-controlled televisions and two hundred rocking furniture swivels to debtor for a period of 84 months. (Debtor's "Exhibit 2"). To secure the obligations under the Lease, debtor granted Telerent a security interest in the following property:

"... 200 Zenith 19" color television receivers, model no. 1953 W with remote control; 200 rocking remote control swivels and ... to be located at the Monte Carlo Hotel, 6551 Collins Avenue, Miami Beach, Florida, *in accordance with lease no. 5008.*" (emphasis added)

The financing statement (Form UCC–1) describing collateral was filed with the Secretary of State under File 88–0000065049. Prior to delivery of the televisions in November, 1988, the parties agreed to substitute the 200 Zenith Televisions with 200 Telecolor televisions, which were also manufactured by Zenith.

In the fall of 1991, the debtor defaulted on the Lease by failing to pay the September, 1991 installment as well as all subsequent payments. On March 20, 1992 Telerent filed a Complaint for Replevin in the Circuit Court for Dade County, to recover the televisions and related equipment. That replevin action was stayed when on March 11, 1992 the debtor filed its Chapter 11 Petition here.

On August 12, 1992, Telerent filed a Motion for Payment of Administrative Claim due to debtor's failure to make *any* payment since the filing of the petition. Pursuant to this Court's order dated September 10, 1992, an evidentiary hearing was held to ascertain whether the television lease was a "true lease" or a financing device. On September 24, 1992, this Court orally ruled that the television Lease was a security device. Debtor also challenges the validity of Telerent's security interest in the televisions and furniture swivels, and alternatively seeks to establish a minimum value for Telerent's secured claim.

■ The initial inquiry in resolving the issues raised must, of course, be focused on the legal sufficiency of the description of the collateral set forth in Telerent's UCC–1 financing statement. It is contended by Telerent that the UCC–1's explicit reference to the televisions "... in accordance with Lease No. 5008" is by itself sufficient to give notice as to the extent of the security interest it claims. Therefore, Telerent asserts its security interest was properly perfected and it is entitled to adequate protection of its interest. Moreover, if the debtor fails to furnish same, is entitled to obtain relief from the automatic stay. In opposition, debtor maintains that the security interest claimed by Telerent pursuant to its UCC–1 is ineffective because it fails to properly describe the equipment pledged by the debtor. To overcome the obvious sufficiency of Telerent's UCC–1 filing, debtor asserts that the financing statement does not encompass any equipment not described by specific name and model number.

■ The debtor's contention is completely without merit. Fla.Stat. § 679.110, provides that "any description of personal property ... is sufficient whether or not specific if it reasonably identifies what is described...." See *Richardson v. Myers,* 106 Fla. 136, 143 So. 157 (1932); *American Restaurant Supply Co. v. Wilson,* 371 So.2d 489 (Fla. 1st DCA 1979); *In Re CM Systems, Inc.,* 87 B.R. 707 (Bankr.M.D.Fla. 1988). In the instant case, the financing statement identified the collateral as televisions and also specifically directed the reader to review Telerent's Lease No. 5008. It is clear that describing collateral by reference to other documents is not fatal as descriptions of collateral need not be of a specific and detailed nature. See *In Re: David Ziluck,* 139 B.R. 44 (Bankr.S.D.Fla. 1992) (retaining a security interest in "all merchandise charged to an account" reasonably identified the property subject to the security interest—namely any property purchased with a particular merchant's credit card); *Chase Bank of Florida, N.A. v. Muscarella,* 582 So.2d 1196 (Fla. 2nd DCA 1991) *reh'g. denied* August 2, 1991 (describing collateral as "more particularly defined and described" in an assignment of

partnership interest was sufficient description).

It is axiomatic that the purpose for describing collateral is to put the world on notice that a security interest exists on particular property and that further inquiry regarding the extent of the security interest may be necessary. *See In re Sojack Miller, Inc.*, 93 B.R. 768 (Bankr. M.D.Fla.1988); *In re Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir.1981). Telerent's description of the collateral in its financing statement is sufficient as it needs only contain a statement indicating that types or description generally of an item subject to the security interest. See Fla. Stat. § 679.402.[1]

By describing the collateral "in accordance with Lease #5008," Telerent adequately placed subsequent creditors on notice that the collateral may be subject to other terms and conditions of the lease. This Court believes that a potential creditor who reviews this financing statement would surely know that further inquiry from the parties concerned was necessary to disclose the complete state of affairs before it could reasonably expect to have priority in a subsequent security interest. *See also In Re APF Indus., Inc.*, 112 B.R. 446 (Bankr.M.D.Fla.1990) (reference to security agreement was sufficient description).

## VALUE OF TELEVISIONS

After concluding that the television lease was a security device, the Court heard testimony as to the valuation of the collateral as of the date of the Chapter 11 filing. Debtor offered only the deposition transcript of one witness to support its valuation of the televisions. Mr. Norman Schwartz, the debtor's witness, only had limited experience relating to the valuation of used television sets. Other than his experience with respect to his son's involvement, and that experience was particularly limited in buying and selling used electronics, Mr. Schwartz' experience was limited to auctions and distress sales. Despite evidence to the contrary, Mr. Schwartz testified that the televisions were "off-brands". Neither Mr. Schwartz nor the alleged experts he conferred with had any idea that the televisions were also manufactured by Zenith. Furthermore, Mr. Schwartz testified that he sampled only approximately one dozen of the 200 televisions sets, and they were televisions exposed to the rain and wind of Hurricane Andrew. Despite failing to set forth any credible evidence as to recent sales of Telecolor units, or similar units, other than at distress sales, Mr. Schwartz valued the 19 inch television sets at $40.00 each. He offered no opinion of value as to the one 35 inch television.

Alternatively, Telerent's witness, Phil O'Brien, testified at the evidentiary hearing that he has been a television leasing and sales representative in the South Florida market for approximately 15 years and is very knowledgeable as to the market prices of both the televisions in question as well as similar units of competitors. Mr. O'Brien was previously employed in a similar capacity by a major manufacturer of televisions. It is a function of Mr. O'Brien's employment to be keenly aware of the value of televisions, and the most appropriate price for buying and selling used televisions. Mr. O'Brien testified that as a general principal the hotel industry does not dispose of equipment by way of auction or distress sales, but often by means of so-called "ballroom sales". It was his experience that these televisions were recently valued at ballroom sales at a price between $90 and $125 per piece. Mr. O'Brien also opined that the one 35 inch

---

1. As the 1972 Official Comment 9–402—of the Uniform Commercial Code states:

   This section adopts the system of "notice filing" which proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under Chattel Mortgage or Conditional Sales Act, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The note itself indicates merely that a secured party who has filed may have a security interest in the collateral described. **Further inquiry from the parties concerned will be necessary to disclose a complete state of affairs.**

   19 C.Fla.Stat. Annotated 337 (1990) (emphasis added).

**610**

television was worth at least $600. Telerent's valuation of the televisions clearly and more accurately reflects the market. Accordingly, it is

ORDERED AND ADJUDGED AND DECREED that Telerent's financing statement was properly perfected and Telerent is hereby entitled to an allowed secured claim with respect to the television sets; it is

FURTHER ORDERED AND ADJUDGED AND DECREED that the 19 inch television sets are valued at $85.00 per television and the 35 inch television is valued at $600, all as of the date of the Chapter 11 filing. This Order is not intended to deal with adequate protection issues.

DONE AND ORDERED.