**In the Matter of George W. ANDERSON and Shirley M. Anderson, Debtors.**

**George W. ANDERSON and Shirley M. Anderson, Plaintiffs,**

**v.**

**MONTGOMERY WARD & CO., INC., Defendant.**

**Bankruptcy No. BK81–1501. Adv. No. A81–703.**

United States Bankruptcy Court, D. Nebraska.

Sept. 13, 1982.

Lorin Galvin, Omaha, Neb., for plaintiffs.

David Latenser, Omaha, Neb., for defendant.

MEMORANDUM

DAVID L. CRAWFORD, Bankruptcy Judge.

This case presents the issue of whether the revolving charge agreement utilized by Montgomery Wards & Co., Inc. ("Wards") retains its character as a "purchase money security interest" as to all items purchased thereunder.

The facts are undisputed and appear from the order on pretrial conference as follows:

"1. The Court has jurisdiction of the subject matter of this action and of the parties.

"2. Montgomery Ward & Co., Inc., is a corporation organized and existing under the laws of the State of Illinois, and at all times herein material is duly qualified to transact business in the State of Nebraska.

"3. Montgomery Ward & Co., Inc., hereinafter referred to as Wards, is engaged in the sale of retail sale merchandise at department store locations in Omaha, Nebraska and does business as 'Wards' or 'Montgomery Wards'.

"4. On or about September 10, 1980 George W. Anderson, Sr. and Shirley M. Anderson, hereinafter referred to as debtors, entered into a revolving charge account agreement with Wards and were issued a Wards credit card. From time to time thereafter, debtors purchased store merchandise from Wards and made payments to Wards under the terms of the account agreement. All debits and credits on account, including all purchases, payments, finance charges and interest were set forth in a written monthly statement of account, mailed to debtors' current residence and received there each month.

"5. The dates and amounts of all purchases made by debtors on said revolving charge account are as follows:

| Date | Description | Amount | |
|------|-------------|--------|---|
| 10–7–80 | freezer purchase | $301.63 | |
| 11–15–80 | Misc. purchase | 40.33 | |
| 11–17–80 | payment | 15.00 | CR |
| 11–25–80 | Misc. purchase | 10.70 | |
| 12–10–80 | Misc. purchase | 7.25 | |
| 12–31–80 | payment | 16.00 | CR |
| 1–10–81 | purchase TV & stand | 386.85 | |

"6. The revolving charge agreement signed by debtors provides in part as follows: 'Except for motor vehicle purchases, Wards will retain a purchase money security interest as permitted by law in each consumer good purchased under this agreement until such consumer good together with related finance charge is paid for in full. Wards will not claim a security interest or other lien in any other property. Application of payments to purchases. Payments will be applied first to unpaid insurance premiums, second to unpaid finance charge and third to purchases in the order of purchase.' The October 7, 1980 freezer purchase was the first purchase on this account by debtors. No previous balance existed prior to October 7, 1980. The January 10, 1981 purchase of tv and stand was the last purchase made by debtors on the account. No payments or transactions of any kind were entered into by the parties subsequent to January 10, 1981.

"7. Sales slips signed by debtors at the time of purchase of merchandise set forth the following language above the place for signature. 'This purchase is subject to the terms of my credit agreement with you. You will retain a security agreement in this merchandise until it is paid for in full.'

"8. The store merchandise purchased by debtors specifically the color tv and stand and the freezer are consumer goods used for household purposes. The value of the color tv and stand is $250.00 and the value of the freezer is $200.00 as of the date of this order.

"9. Debtors allege the items claimed secured by Wards are needed to maintain a home for the debtors and their family; presently the debtors have in their possession all of the items claimed secured by Wards.

"10. The freezer and tv and stand would be exempt to the debtors but for the claimed security interest."

A determination of whether Wards retains a purchase money security interest in all of the items purchased is at issue in this litigation because of the debtor's right under 11 U.S.C. § 522 to nonpurchase money, non-possessory security interests in items which would otherwise be exempt.

The Nebraska Uniform Commercial Code § 9–107 defines a "purchase money security interest" to be a security interest to the extent that it is . . .

"(a) taken or retained by the seller of the collateral to secure all or part of its price."

A threshhold question is whether the language of the revolving charge agreement combined with the sales slips signed by the plaintiff operated to create a purchase money security interest in the items so purchased. I hold that they did. Each of the sales slips explained that the purchase was subject to the terms of the credit agreement with Wards and that Wards was retaining a security interest in the merchandise until the merchandise was paid for.

In addition, I conclude that Wards retained a purchase money security interest in each of the items. The revolving charge agreement provides that Wards would retain a security interest in each of the items until it was paid for, the payments to Wards being applied to purchases in the

order of purchase. The result would be that as payments were received, the purchase price of the items first purchased would be reduced, and upon payment for the item, the security interest would be released.[1] The result is retention of the character of the original credit extension without frustration of the concept of purchase money security interest as that is described by the Nebraska Uniform Commercial Code.

The result of the foregoing is that the plaintiffs may not avoid the security interest held by the defendant in the items here in dispute since the credit transactions are purchase money and, therefore, not within 11 U.S.C. § 522.[2]

A separate order is entered in accordance with the foregoing.

1. For a case involving a security agreement having virtually identical terms, see *In re Staley,* 22 U.C.C. 799, 426 F.Supp. 437 (N.D.Ga. 1977). Held: Where the security interest was granted, by the terms of the single security agreement, in each item of merchandise purchased until the item had been paid and further provided that payments were to be applied to items in the order of purchase, the purchase money character of the security interest was retained.

2. Authority for an attempted combination into one contract of an existing purchase money obligation into a new purchase money debt is *In Re Booker,* 9 B.R. 710, 31 U.C.C. 285 (Bkrtcy.N.D.Ga.1981). Held: The purchase money character of the latter transaction was destroyed by its combination with a pre-existing purchase money security interest. Debtors were entitled to avoid the lien under 11 U.S.C. § 522(f).