### In re George Ellis MOODY.

### Bankruptcy No. 86–00067–BRC–GRS.

United States Bankruptcy Court,
N.D. Mississippi.

May 30, 1986.

Sears. He had obtained his charge account by signing a document entitled "Sears, Roebuck and Company Searscharge Security Agreement". (Exhibit 1 attached to Sears' motion to lift stay.)

Debtor argues that a purchase money security interest in consumer goods does not exist in Mississippi, and that if there is, then the description in the security agreement signed by the debtor is legally insufficient.

The security agreement, under paragraph 7 states that Sears maintains a security interest in "all merchandise charged to the account".

Robert G. Johnston, Alexander, Johnston & Alexander, Cleveland, Miss., for George Ellis Moody, debtor.

Robert L. McArty, Perry, Morrison & Smith, Jackson, Miss., for Sears, Roebuck & Co.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the motion seeking relief from the automatic stay filed by Sears, Roebuck and Company, hereinafter referred to as Sears; response to said motion filed by the Debtor, George Ellis Moody; all parties being represented by their respective attorneys of record; and the Court having heard and considered same, hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G).

### II.

Debtor, George Ellis Moody, through the use of his Sears charge account, purchased a VCR–VHS and a 30″ electric range from

### III.

Debtor, through counsel, developed a series of steps through which he concluded that there is no statutory purchase money security interest in consumer goods in Mississippi. After going through a somewhat strained analysis, the debtor announced that "Thus, clearly and absolutely, the traditional Mississippi purchase money lien has been abolished". Possibly the *"traditional* purchase money lien" has been abolished. However, as set forth in the discussion hereinbelow, it has been replaced by one found in the Uniform Commercial Code, hereinafter referred to as UCC.

### IV.

Debtor overlooks the fact that current Mississippi law is spread throughout the UCC sections of the Mississippi Code of 1972, hereinafter MCA. It is true that § 337 of the 1942 Code has been repealed, but the effect of this section has been rekindled as a result of the interaction of several current MCA sections.

MCA § 75–9–105(1)(*l* ) defines "security agreement" as "an agreement which creates or provides for a security interest".

MCA § 75–9–107 provides the definition for "purchase money security interest" as follows:

A security interest is a 'purchase money security interest' to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

MCA § 75-9-203 is entitled "Attachment and enforceability of security interest; proceeds; formal requisites". Subsections (1) and (2) thereunder provide for the attachment of the security interest to collateral as follows:

(1) Subject to the provisions of section 75-4-208 on the security interest of a collecting bank and section 75-9-113 on a security interest arising under the chapter on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and, in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

Pursuant to MCA § 75-9-302(1)(d), a purchase money security interest in consumer goods *does not require the filing of a financing statement.*

MCA § 75-9-303 provides for the perfection of the security interest and states as follows:

(1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in Sections 9-302, 9-304, 9-305, and 9-306 [§§ 75-9-302, 75-9-304, 75-9-305, and 75-9-306]. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.

(2) If a security interest is originally perfected in any way permitted under this chapter and is subsequently perfected in some other way under this chapter, without an intermediate period when it was unperfected, the security interest shall be deemed to be perfected continuously for the purposes of this chapter.

MCA § 75-9-109(1) states that consumer goods are goods that are "used or bought for use primarily for personal, family, or household purposes". This is comparable to the "consumer debt" definition found in 11 U.S.C. § 101(7).

Thus, once the parties come to an agreement and the requirements of MCA § 75-9-203 are met, the security interest of the secured party attaches to the collateral. In order for perfection to occur the requirements of § 75-9-303 must be met. In the case of a purchase money security interest in consumer goods, for perfection to occur, the definition of "purchase money security interest" in MCA § 75-9-107 must fit the transaction, and the security interest created by the security agreement must be in "consumer goods" as defined in MCA § 75-9-109(1). So far, in this case, these statutory requirements have been met.

### V.

██ Debtor alleges that the description in the security agreement is deficient in that it is not specific enough to determine precisely what property is covered by the agreement. The requirement of a description is set out in MCA § 75-9-203(1)(a), *supra.* MCA § 75-9-110 sets out what will be considered sufficient in terms of a description:

For the purposes of this chapter any description of personal property or real

estate is sufficient whether or not it is specific if it reasonably identifies what is described, except that a description of real estate in an instrument filed to perfect a security interest in fixtures is sufficient only if the filing or recording of the same constitutes constructive notice under the laws of this state, other than this chapter, which are applicable to the filing or recording of real estate mortgages and deeds of trust.

Thus, the test is one of "reasonable identification".

Here, the Sears security agreement makes reference to supporting invoices, which were subsequently prepared, and which contain an accurate description of the merchandise purchased.

At least one case has been published dealing with the sufficiency of the Sears security agreement. *In Re Tucker*, 36 B.R. 706 (Bankr.S.D.Ill.—1984) is a case factually similar to the case at bar. In that case, the court examined a Sears security agreement, practically identical in all material aspects to that before this Court, and found the agreement to be legally sufficient.

Another case dealing with a security agreement that referenced the reader to invoices detailing the debtor's purchases is *In Re Cawthorn*, 1 B.R. 267 (Bankr.W.D. Va.—1979). That case held that although the security agreement referenced the reader to invoice numbers to determine what merchandise was covered under the agreement, such agreement was nevertheless valid. The court cited a UCC section which is identical to MCA § 75–9–110, and maintained that "[i]f the description gives 'notice' to a third party who upon reasonable inquiry can determine what is, in fact, included as collateral secured thereby it is sufficient". At 272. The court further interpreted that statement by saying that it "means that the third parties must inquire and ascertain once he is on 'notice'." (citations omitted). *Id.*

This case deals only with a dispute between the debtor and the "would be" secured creditor. There is no contest between competing lien holders; so as a result, the question of perfection is largely academic. The actual controversy centers on whether the Sears security agreement, referenced to the underlying invoices, legitimately creates a valid security interest in the VCR–VHS and the range purchased on credit, both of which are specifically described in the invoices. (See Exhibits 2 and 3, Sears motion to lift stay.) As between the parties embroiled in this contested proceeding, the Court is of the opinion that the collateral description by reference is sufficient to create a legally binding security interest.

## VI.

■ The debtor also maintains that Sears cannot take a security interest in goods to be purchased in the future, contrary to the practice of Sears to have the debtor execute a security agreement, which effectively creates a purchase money security interest in all goods purchased contemporaneously or subsequently. The clause contained in the security agreement "all merchandise charged to the account" operates as a future advances clause. Essentially, this is a "floating lien" which has been upheld in Georgia, Maryland, and Wisconsin. *See, Babson Credit Plan, Inc. v. Cordele Production Credit Asso.* 146 Ga.App. 266, 246 S.E.2d 354, 24 U.C.C.R.S. 437 (1978); *Frankel v. Associates Financial Services Co.* 281 Md. 172, 377 A.2d 1166, 22 U.C.C.R.S. 801 (1977); and *John Miller Supply Co. v. Western State Bank* 55 Wis.2d 385, 199 N.W.2d 161, 10 U.C.C. R.S. 1329 (1972).

The methodology utilized by Sears appears to be further approved by MCA § 75–9–204, which is captioned "After-acquired property; future advances", and which provides as follows:

(1) Except as provided in subsection (2), a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.

(2) No security interest attaches under an after-acquired property clause to consumer goods other than accessions (section 75–9–314) when given as additional security unless the debtor acquires rights in them within ten (10) days after the secured party gives value.

(3) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (section 75–9–105(1)).

It is, therefore, the opinion of this Court that Sears maintains a legally valid purchase money security interest in the debtor's VCR–VHS and range. The motion seeking relief from the automatic stay is well taken and will be sustained.

An Order, consistent with this Opinion, will be entered separately.