**In re Lucy BOYKINS and Willie Boykins.**

**Bankruptcy No. 90–40650.**

United States Bankruptcy Court, N.D. Mississippi.

July 20, 1990.

W. Howard Gunn, Aberdeen, Miss., for Lucy Boykins and Willie Boykins.

Michael D. Jonas, Aberdeen, Miss., for City Finance.

## OPINION

DAVID W. HOUSTON, III,
Bankruptcy Judge.

On consideration before the Court is the objection to confirmation of the debtors' Chapter 13 plan filed by City Finance Company; each of the parties having submitted memoranda of law addressing the issues raised in the said objection; all parties being represented by their respective attorneys of record; and the Court having considered same, hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A)(B)(L), and (O).

### II.

On May 8, 1989, City Finance extended a renewal loan to the debtors totaling $2,620.80. This loan was evidenced by a combined promissory note and security agreement which encumbered specific items of personal property, all of which were separately identified on "Schedule A" attached to the document. In connection with a previous loan, which was renewed by this particular transaction, the debtors had executed a UCC–1 Financing Statement which had been filed for record with the Chancery Clerk of Monroe County, Mississippi, in March, 1989. The collateral covered by the financing statement was described as follows:

"Consumer Goods—consisting of personal property of all kinds and types located on or about Debtor's residence stated above BUT NOT INCLUDING HOUSEHOLD GOODS as defined in FTC Rule, Code of Fed. Regs. § 444.1(i)."

The adequacy of this description in the financing statement constitutes one of the issues in this proceeding.

On June 17, 1989, the debtors purchased two diamond nugget watches and a diamond nugget ring from Standard Marketing Corporation for a total time price of $1,059.60. The total time price was secured by the items purchased as evidenced by a retail installment sale agreement/consumer credit installment contract executed by Willie Boykins. No financing statement was filed in connection with this transaction since it was considered a purchase money security interest in consumer goods. The contract was assigned by Standard Marketing Corporation to City Finance on

or about July 23, 1989, the date of the invoice introduced into evidence as City Finance Exhibit 2. Whether City Finance has a perfected security interest in this property constitutes the second issue in this proceeding.

(All Code sections set forth hereinbelow will be considered as Miss.Code Ann. (1972), unless specifically designated otherwise.)

### III.

Because it can be resolved fairly quickly, the Court will address the second issue first.

Section 75–9–105(1)(*l*) defines "security agreement" as "an agreement which creates or provides for a security interest."

Section 75–9–107 provides the definition for "purchase money security interest" as follows:

A security interest is a 'purchase money security interest' to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Section 75–9–203 is entitled "Attachment and enforceability of security interest; proceeds; formal requisites." Subsections (1) and (2), thereunder, provide for the attachment of the security interest to collateral as follows:

(1) Subject to the provisions of section 75–4–208 on the security interest of a collecting bank and section 75–9–113 on a security interest arising under the chapter on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and, in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

■ Pursuant to § 75–9–302(1)(d), a purchase money security interest in consumer goods *does not require the filing of a financing statement.*

Section 75–9–109(1) states that consumer goods are goods that are "used or bought for use primarily for personal, family, or household purposes." This is comparable to the "consumer debt" definition found in 11 U.S.C. § 101(7).

■ The Court is of the opinion that the two watches and the ring acquired from Standard Marketing Corporation fall within the definition of consumer goods. The transaction was obviously a purchase money transaction and the assignment from Standard Marketing Corporation to City Finance does not modify the character of the transaction. As such, the Court finds that City Finance effectively holds a purchase money security interest in the two watches and the ring acquired from Standard Marketing Corporation. The filing of a financing statement is not required to perfect City Finance's lien in these items of property. All the requisites for the creation, attachment, and perfection of this lien have been met.

The debtors must, therefore, amend their Chapter 13 plan to provide payment to City Finance as a secured creditor for this collateral pursuant to 11 U.S.C. § 1325(a)(5). In support of this conclusion, please see this Court's decision in *In re Moody*, 62 B.R. 282 (Bankr.N.D.Miss.1986).

### IV.

The parties in this proceeding do not dispute that, *insofar as they are con-*

*cerned*, a lien was created as a result of the execution of the combined promissory note and security agreement which clearly encumbered the several items of personal property listed on "Schedule A." See City Finance Exhibit 1. They vigorously dispute, however, that this lien has been properly perfected.

■ When a secured transaction involves a nonpurchase money security interest in consumer goods, perfection is accomplished by filing a valid financing statement.

The formal requisites of a financing statement are found in § 75–9–402(1) which is set forth as follows:

(1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned. When the financing statement covers timber to be cut or covers minerals or the like (including oil and gas) or accounts subject to section 75–9–103(5), or when the financing statement is filed as a fixture filing (section 75–9–313) and the collateral is goods which are or are to become fixtures, the statement must also comply with subsection (5). A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor. A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state ...

The Court would also point out § 75–9–402(8):

(8) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

The debtors contend that the collateral description in the financing statement filed by City Finance is deficient in that it is not specific enough to determine accurately what property is covered.

Section 75–9–110 sets out what will be considered sufficient in terms of a description:

For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described, except that a description of real estate in an instrument filed to perfect a security interest in fixtures is sufficient only if the filing or recording of the same constitutes constructive notice under the laws of this state, other than this chapter, which are applicable to the filing or recording of real estate mortgages and deeds of trust.

Thus the test is one of "reasonable identification."

The cases generally hold that the primary purpose of a financing statement is to provide notice of the existence of a security interest. *In re Cawthorn*, 1 B.R. 267, 272 (Bankr.W.D.Va.1979) dealt with a UCC section that is identical to § 75–9–110 and held that "[i]f the description gives 'notice' to a third party who upon reasonable inquiry can determine what is, in fact, included as collateral secured thereby, it is sufficient." The Court further interpreted that statement by saying that it "means that the third party must inquire and ascertain once he is on 'notice'." (citations omitted.) *Id.*

The Court in *Mogul Enterprises, Inc. v. Commercial Credit*, 92 N.M. 215, 585 P.2d 1096 (1978), stated, *inter alia*, that UCC § 402 adopts a system of notice filing designed to replace rigid description requirements. In that case, the financing statement purported to cover "all assets ... regardless of type or description now owned ... or to be bought in the future"

... This language was obviously too vague to meet the statutory requirement that the financing statement at least describe "the type" of collateral.

In *In re Lehner*, 303 F.Supp. 317 (D.Colo.1969), aff'd 427 F.2d 357 (10th Cir. 1970), the financing statement purported to cover "all consumer goods" as the secured collateral. There, the bankruptcy court, district court, and Tenth Circuit Court of Appeals held that the description was overly broad. The district court cited treatises written by Professor Gilmore and Professor Honnold, to-wit:

"A filed financing statement must describe the types of collateral in which the secured party claims, or may claim, an interest. The description by "types" is understood to require a certain degree of specificity: it would not be sufficient for the notice to claim "all the debtor's property." Thus if a secured party is financing a dealer's inventory which includes washing machines, television sets, phonographs, radios and refrigerators, it would be advisable for the notice to list each of these "types" of collateral separately. Gilmore, Security Interests in Personal Property § 15.3, at 477 (1965) ...

... To perform its function of public notice the financing statement must (9–402) give several items of information not required in the security agreement (e.g. the address of the secured party and the debtor); on the other hand the goods need not be "described"; UCC 9–402(1) provides that "indicating the *types* will suffice (e.g. "Motor vehicles.") J. Honnold, Law of Sales and Sales Financing 507 (University Casebook Series 1968)."

303 F.Supp. at 319.

The Court agrees that it would be *advisable* to be as specific as possible or practicable. However, as a comment on the inventory example offered by Professor Gilmore, this Court has seen few financing statements describing inventory where the description is more specific than simply the word "inventory."

■ This Court does not disagree with either the *Mogul Enterprises* or *Lehner*

decisions. However, in the instant proceeding, the description of the secured collateral in the financing statement is a bit more specific. The description can be broken down into the following constituent elements:

A. Consumer goods

B. Personal property of all kinds and types

C. Located on or about debtor's residence stated above; and

D. Not including household goods as defined in FTC Rule, Code of Fed.Regs. § 444.1(i).

The combination of all four of these elements narrows the description considerably from just "all assets" or "all consumer goods." This Court is of the opinion that a prudent third party would be put on notice to a sufficient extent to make inquiry, in this case of City Finance, to ascertain the items of collateral encumbered by the City Finance security agreement. The items set forth on "Schedule A" could be then identified with particularity to the third party.

Neither the security agreement nor the financing statement attempt to encumber any after acquired property. The language in the security agreement identifying the collateral is very specific on this point, to-wit:

"Consumer goods consisting of personal property located on or about your residence stated above "unless otherwise stated" *now owned* and specifically identified on "Schedule A" attached hereto and made a part hereof." (emphasis added)

Therefore, this Court is of the opinion that the *Mogul Enterprises* and *Lehner* cases are factually distinguishable from the matter now before this Court. The language in the financing statement does identify with sufficient particularity the "type" of collateral which is encumbered in order to provide reasonable notice to a third party to inquire further. Perfection of the lien has been accomplished both as to the trustee in this case, as well as, the debtors should they propose to utilize the provisions of 11 U.S.C. § 522(g).

The debtors shall be permitted an opportunity to amend their plan as set forth above to treat this portion of City Finance's claim as a secured claim pursuant to 11 U.S.C. § 1325(a)(5).

The amendments to the debtors' Chapter 13 plan as required herein shall be made within twenty days of the date hereof. Should the debtors not elect to amend their plan, confirmation will be denied.

An Order will be entered consistent with this Opinion.