**In re David S. ZILUCK and Brenda L. Ziluck, Debtors.**

**Bankruptcy No. 91–6558–CIV.**

United States District Court, S.D. Florida.

March 17, 1992.

Magda Abdo–Gomez, Miami, Fla., for appellees.

Mitchell W. Berger & Leonard K. Samuels of Berger & Shapiro, Fort Lauderdale, Fla., for appellant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon Tandy Credit Corporation's ("Tandy") appeal from an order of the United States Bankruptcy Court for the Southern District of Florida denying Tandy's Application For Order Directing Trustee Or Debtor To Deliver Possession Of Consumer Goods. 127 B.R. 285. The parties have fully briefed the issues herein, and the Court heard argument of counsel on Friday, February 14, 1992. The appeal is now ripe for disposition.

### Facts

On March 28, 1989, David S. Ziluck applied for a Radio Shack credit card by filling out and executing a Radio Shack RSVP Credit Card Application. The front of the application contained blanks for Ziluck to enter various employment, personal, and financial information. The front of the application also provided a space for Ziluck's signature, above which was the following language:

I have read the Radio Shack Credit Account and Security Agreement, including the notice provisions in the last paragraph thereof, and it contains no blanks or blank spaces. I agree to the terms of the Agreement and acknowledge receipt of a copy of the Agreement.

On the back of the application was what was labeled Radio Shack Credit Account and Security Agreement. Significantly,

paragraph 12 of the Radio Shack Credit Account and Security Agreement provided:

12. SECURITY INTEREST. We retain a security interest under the Uniform Commercial Code in all merchandise charged to your Account. If you do not make payments on your Account as agreed, the security interest allows us to repossess only the merchandise that has not been paid in full. You are responsible for any loss or damage to the merchandise until the price is fully paid. We give up any right to retain or acquire any lien which we might be automatically entitled to by law on your principal dwelling. This does not apply to a lien created by a court judgment or acquired by a filing as provided by statute.

Ziluck filled in the blanks on the front of the application. Ziluck also affixed his signature on the signature line provided on the front of the application. Ziluck did not sign the back of the application, which bore the language of the security agreement, because the back of the application had no space for Ziluck to do so.

Tandy issued Ziluck a credit card, and Ziluck used the card to purchase several items from Radio Shack retail stores. On December 21, 1990, Ziluck and his wife filed for protection from their creditors under Chapter 7 of the United States Bankruptcy Code.

Tandy applied to the bankruptcy court for an order directing the trustee of the bankruptcy estate to deliver possession of the goods Ziluck had purchased with the credit card. Tandy believed it was entitled to take possession of the goods pursuant to what it believed to be its properly perfected security interest in the subject goods. The bankruptcy court denied the motion and Tandy appealed.

### Standard of Review

The Court reviews the bankruptcy court's conclusions of law *de novo*. *See In Re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990). Where an issue raises a mixed question of law and fact, the Court likewise will review the bankruptcy court's determinations *de novo*. *In Re Mader*, 108 B.R. 643, 644 (N.D.Ill.1989). However, this Court

will not overturn the bankruptcy court's factual findings unless the Court determines that those findings are clearly erroneous. *In Re Pepenella*, 103 B.R. 299, 300 (M.D.Fla.1988).

## Issues On Appeal

Tandy's appeal presents two questions: (1) Did the Radio Shack Credit Account and Security Agreement contain a sufficient description of the consumer goods which served as collateral, as required by Fla.Stat. § 679.203(1)(a), so that Tandy's purchase money security interest attached to the subject consumer goods? (2) Did Ziluck's execution of the credit card application comply with Fla.Stat. § 679.203(1)(a) which requires that a security agreement be signed?

The bankruptcy court answered both questions in the negative and found that Tandy's security interest in the goods Ziluck purchased on the credit card had not attached. This Court would answer both questions in the affirmative. Accordingly, the Court will reverse.

## Discussion

The parties seem to be in agreement that the goods at issue here are consumer goods and that Tandy's interest in the goods was a purchase money security interest. The parties disagree over whether Tandy's security interest in the consumer goods attached and, because a security interest in consumer goods is perfected upon attachment, whether the security interest was perfected.

The bankruptcy court found that the security interest did not attach, and therefore was not perfected, because Ziluck never "signed" the security agreement and because the security agreement did not contain a sufficient description of the collateral. This Court disagrees with both findings.

■ Turning first to the signature issue, the Court finds that Ziluck did in fact sign the security agreement. Ziluck signed the front of the credit card application on a line provided. Directly above the signature line in clear, bold print appeared the following language:

> I have read the Radio Shack Credit Account and Security Agreement, including the notice provision in the last paragraph thereof, and it contains no blanks or blank spaces. I agree to the terms of the Agreement and acknowledge receipt of a copy of the Agreement.

The Court believes that Ziluck's signature on the front of the credit card application, and directly below the above-quoted language, was sufficient to comply with Fla. Stat. § 679.203(1)(a). The bankruptcy court's contrary finding was in error.

■ The Court also finds that the bankruptcy court erred in finding that the description of the collateral in the security agreement was insufficient. Florida Statute § 679.110 provides that "any description of personal property ... is sufficient whether or not it is specific if it reasonably identifies what is described." The Court believes that the language in paragraph 12 of the security agreement, "[w]e retain a security interest under the Uniform Commercial Code in all merchandise charged to your account," reasonably identifies the property subject to the security interest— namely any property purchased with the subject credit card. *Cf. In Re Elia*, 18 B.R. 89, 33 U.C.C. Rep. 750 (Bankr.W.D.Pa. 1982); *In Re Thibodeau*, 6 U.C.C. Rep. 873 (D.Me.1969); *In Re Moody*, 62 B.R. 282 (Bankr.N.D.Miss.1986). Accordingly, the Court finds that the security agreement contains a sufficient description of the collateral as required by Fla.Stat. § 679.-203(1)(a).

Accordingly, having reviewed the record, and being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED that the order of the United States Bankruptcy Court for the Southern District of Florida denying Tandy Credit Corporation's Application For Order Directing Trustee Or Debtor To

Deliver Possession Of Consumer Goods is VACATED and the above-styled cause is REMANDED. Upon remand, the United States Bankruptcy Court for the Southern District of Florida is DIRECTED to reconsider Tandy's Application in the light of this Court's findings and to enter an appropriate order consistent with this opinion.

DONE AND ORDERED.