In re Oscar MARTINEZ, Debtor.

**TANDY CREDIT CORPORATION, A DIVISION OF TANDY CORPORATION, Plaintiff,**

v.

**Oscar MARTINEZ, Defendant.**

**Bankruptcy No. 93 B 07160.
Adv. No. 93 A 00933.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 31, 1994.

Opinion Denying Motion to Alter or Amend
Feb. 21, 1995.

Scott J. Kofkin, Kofkin, Feld & Korrub, Chicago, IL, for debtor/defendant.

Robert Isham, Jr., Chicago, IL, for plaintiff.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

The matter before the court is Tandy Credit Corporation's, a Division of Tandy Corporation, ("Tandy") Motion for Summary Judgment against Oscar Martinez ("Martinez"). Tandy contends that it has a valid lien, pursuant to a security agreement signed by Martinez, on consumer electronics products purchased by Martinez on credit from one of its stores. As Martinez did not respond to Tandy's Motion, he is deemed not to contest it. Since Tandy's security agreement conforms with requirements of the Uniform Commercial Code ("UCC"), the court shall grant its Motion for Summary Judgment.

## SUMMARY OF THE UNDISPUTED FACTS

The local Bankruptcy Rules for the United States District Court and the United States Bankruptcy Court for the Northern District of Illinois ("Rule") requires the moving party to file a detailed statement of material facts as to which there is no genuine issue. Rule 402.M. The party opposing the motion is required by Rule 402.N to file a response to the movant's statement and set forth any facts which require denial of summary judgment. Failure to file a Rule 402.N response results in all material facts set forth in the moving party's 402.M statement being deemed admitted unless controverted by a statement of the opposing party. *Wienco, Inc. v. Katahn Assocs. Inc.*, 965 F.2d 565, 566 (7th Cir.1992).

Tandy filed its 402.M statement while Martinez failed to file his 402.N response. From the filings of the parties pursuant to Fed. R.Bankr.R. 7056 and Tandy's 402.M statement, the following facts emerge as undisputed:

The facts of this case resemble the all too familiar story of the American consumer. The consumer is offered a credit card, accepts the offer, charges more than he or she can afford on the card and then can not meet its obligation to pay the bill. On February 1, 1991, Martinez applied for and received a credit card from McDuff Electronics & Appliance/Video Concept ("McDuff"), a division of Tandy. On the face of the credit card application, in bold and capital letters, is a reference to a document titled "McDuff Credit Account and Security Agreement" ("Agreement"). This document is located in the pamphlet containing the application.

Two paragraphs of the credit card application and Agreement are relevant. The first is on the face of the credit card application, immediately above the signature line, and reads, in relevant part, as follows:

> I have read the McDuff Credit Account and Security Agreement.... I agree to the terms of the Agreement and acknowledge receipt of a copy of the Agreement.

The other is contained in Paragraph 12 of the Agreement and states that:

> **SECURITY INTEREST.** We retain a security interest under the Uniform Commercial Code in all merchandise charged to your Account. If you do not make payments on your Account as agreed, the security interest allows us to repossess only the merchandise that has not been paid in full. You are responsible for any loss or damage to the merchandise until the price is fully paid. We give up any right to retain or acquire any lien which we might be automatically entitled to by law on your principal dwelling. This does not apply to a lien created by a court judgment or acquired by a filing as provided by statute.

(emphasis original).

Martinez signed the credit card application and it was approved. On that same day, Martinez proceeded to charge approximately $3,100.00 in television and video equipment to his McDuff credit card. Approximately two years later, on April 1, 1993, Martinez filed his petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330). At the time of the filing, the

balance on Martinez's McDuff's account was $3,208.96. On July 23, 1993, Tandy filed its adversary complaint seeking a determination of the validity of its lien.

## JURISDICTION

This court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and general rule 2.33(A) of the General and Civil Rules of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (adopted by Fed.R.Bankr.Pro. 7056). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990); *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Assoc.,* 806 F.2d 146, 149 (7th Cir. 1986)).

The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motions, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and

supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading; the response of that party must set forth specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 567 (7th Cir.1989); *Patrick v. Jasper County,* 901 F.2d 561, 564–66 (7th Cir.1990).

On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56; *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302 (7th Cir.1991); *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991). However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987).

The Court should not "weigh the evidence." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; *Illinois Bell Telephone Co. v. Haines and Company, Inc.,* 905 F.2d 1081, 1087 (7th Cir.1990). However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511; *Trautvetter v. Quick,* 916 F.2d at 1147. When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

Martinez did not respond to the Tandy's Summary Judgment motion. Strict enforcement of Rule 402.N does not mean that a party's failure to submit a timely filing automatically results in summary judgment

for the opposing party. *Wienco*, 965 F.2d at 568; *Matter of Hunt's Health Care, Inc.*, 161 B.R. 971 (Bankr.N.D.Ind.1993). Instead, the court must make the further finding that, given the undisputed facts, summary judgment is proper as a matter of law. *Wienco*, 965 F.2d at 568.

■ Whether Tandy has a valid lien on the consumer goods sold by them to Martinez depend on Tandy demonstrating that:

(a) ... the debtor has signed a security agreement which contains a description of the collateral ...; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

*In re Dillard Ford, Inc.*, 940 F.2d 1507, 1511 (11th Cir.1991), *citing,* 810 ILCS § 5/9–203(1).[1] In his answer to Tandy's complaint, Martinez admits elements (b) and (c) but denies element (a) in that he believes that the contract he signed was a credit card application and not a security agreement. Accordingly, the sole issue before the court is whether the credit card application and Agreement constitutes a security agreement describing the collateral for purposes of article 9 of the UCC.

■ UCC § 9–105(1)(*l*) defines a security agreement as an agreement which creates or provides for a security interest. An agreement is defined as the bargain of the parties in fact as found in their language or by implication from other circumstances. UCC § 1–201(3). The term security agreement is construed broadly to include any writing signed by the debtor evidencing an intent to create a security interest. *Matter of Wiegert;* 145 B.R. 621, 622 (Bankr.D.Neb. 1991); *In re Hardage*, 99 B.R. 738, 740–41 (Bankr.N.D.Tex.1989); *In re Data Entry Service Corp.*, 81 B.R. 467, 469 (Bankr. N.D.Ill.1988). Whether a writing is sufficient is determined by an objective analysis of the language of the agreement. *In re Merritt Dredging Co. Inc.*, 839 F.2d 203, 208 (4th Cir.), *cert. denied sub nom., Compliance Marine, Inc. v. Campbell,* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988); *In re Inman;* 131 B.R. 789, 792 (Bankr.N.D.Tex. 1991); *Hardage,* 99 B.R. at 741.

Credit card applications and security agreements containing language similar to that used by McDuff's have been found to satisfy the objective agreement requirement of UCC § 1–201(3). *In re Ziluck,* 139 B.R. 44, 46 (S.D.Fla.1992) (Tandy credit card application and security agreement containing nearly identical language to that used in this case); *In re Moody,* 62 B.R. 282, 284–85 (Bankr.N.D.Miss.1986) (Sears credit card application and security agreement); *In re Tucker,* 36 B.R. 706, 708 (Bankr.S.D.Ill.1984) (same). The clause above the signature line clearly notified Martinez that he was granting McDuff's a security interest in merchandise that he purchased using his McDuff's credit card. In addition, the language used in the Agreement combined with Martinez's signature on the credit card application satisfy the objective standard that the parties intended to enter into a security agreement. Therefore, Martinez is bound by the security agreement.

■ Finding a security agreement, it must next be determined whether the phrase "all merchandise charged to your account" adequately describes Tandy's collateral. A description of personal property is adequate if it reasonably identifies what is described. UCC § 9–110; *In re Legal Data Systems, Inc.,* 135 B.R. 199, 201 (Bankr.D.Mass.1991); *In re Niles,* 72 B.R. 84, 85–86 (Bankr.N.D.Ill. 1987). The language used in McDuff's security agreement satisfies this specificity condition. *Ziluck,* 139 B.R. at 46; *In re Keneco Financial Group, Inc.,* 131 B.R. 90, 92 (Bankr.N.D.Ill.1991) (phrase "all inventory, chattel paper, accounts, contract rights, equipment and general intangibles" satisfied the specificity requirement); *In re Elia,* 18 B.R. 89 (Bankr.W.D.Pa.1982) (phrase "all goods purchased under this account" fulfills the condition).

■ By accepting McDuff's offer to purchase electronic products on credit, Martinez subjected himself to the terms of the credit card application and Agreement. The Agreement granted a security interest to McDuff for all merchandise purchased on its credit card but not paid for. As the Agree-

---

**1.** 810 ILCS § 5 shall hereinafter be referred to by the corresponding UCC section number.

ment satisfies the requirements of UCC § 1–201(3), McDuff has a valid lien on the products purchased by Martinez on his McDuff credit card.

## CONCLUSION

Tandy's Motion for Summary Judgment shall be granted. The McDuff's credit card application and Agreement created a valid lien on Martinez's property purchased with his McDuff's credit card.

## MEMORANDUM OPINION–MOTION TO ALTER OR AMEND

The matter before the court is Oscar Martinez's ("Martinez") request for the court to reconsider its Memorandum Opinion and Order of October 31, 1994. In that Order, the court granted Tandy Credit Corporation's, a Division of Tandy Corporation, ("Tandy") Motion for Summary Judgment. The court found that Tandy's security agreement conformed with applicable Uniform Commercial Code ("UCC") provisions and created a security interest in certain of Martinez's property. Martinez contends that the court incorrectly interpreted the "composite document theory" under Illinois law and therefore ruled in error. Since Tandy's security agreement conforms with the requirements of the UCC, without resort to the "composite document theory", and because Tandy would prevail under a proper application of that theory, the court shall deny Martinez's Motion to Alter or Amend.

## I. JURISDICTION

The court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334, Fed.R.Civ.P. 59(e), and general rule 2.33(A) of the General and Civil Rules of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## II. UNDISPUTED FACTS AND BACKGROUND

A summary of the undisputed facts is contained in the court's Memorandum Opinion and Order ("Memorandum Opinion") granting Tandy's Motion for Summary Judgment on October 31, 1994, and shall not be re-

stated herein. *See In re Martinez*, 179 B.R. 90 (Bankr.N.D.Ill.1994). Martinez served his Motion to Alter or Amend on November 10, 1994, ten days after the entry of the prior Order and within the requisite time period required by Fed.R.Civ.P. 59(e). Fed.R.Bankr.P. 9023. Although Martinez agrees that no genuine issue of material fact exists, he insists the court incorrectly interpreted and applied the law in its prior opinion.

## III. STANDARD FOR RULE 59(e) "MOTION TO ALTER OR AMEND"

■ The court will assume that Martinez meant a "Motion to Alter or Amend" when he filed his "Motion for Reconsideration". Unless filed pursuant to Fed.R.Bankr.P. 3008 (permitting reconsideration of orders allowing or disallowing claims against the estate), a "Motion for Reconsideration" is not recognized as a proper motion by the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, or the local rules. The Seventh Circuit Court of Appeals has adopted a rule directing lower courts to treat all substantive motions served within ten days of final judgment as motions based upon Rule 59. *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). As the motion was filed within ten days of final judgment, Martinez's motion will be treated as a "Motion to Alter or Amend" under Rule 59(e) as adopted by Fed.R.Bankr.P. 9023.

■ The function of a Rule 59(e) motion is to allow a court an opportunity to correct manifest errors of law or fact, or consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985); *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984); *F/H Industries, Inc. v. Nat. Union Fire Ins. Co.*, 116 F.R.D. 224, 226 (N.D.Ill.1987). It is not to allow the moving party another "bite of the apple" by permitting that party to argue issues more properly raised prior to final judgment. *In re BNT Terminals, Inc.*, 125 B.R. 963, 977 (Bankr.N.D.Ill.1990). Furthermore, Rule 59(e) "is not a procedural folly to

be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

Given that Martinez did not see fit to contest Tandy's Motion for Summary Judgment, the court is not particularly sympathetic to Martinez's pleas now. However, regardless of whether they merit review, Martinez's arguments are addressed at length and given just consideration in the following discussion.

## IV. *DISCUSSION*

■ Martinez's assertions that the court erroneously applied and interpreted the law are based upon two separate claims. First, Martinez believes that the court relied on the decisions of other jurisdictions without lending proper attention to Illinois decisions interpreting the UCC. In addition, Martinez argues that the court misapplied the "composite document theory" by omitting an alleged requirement that the sales invoices signed by Martinez must refer to the McDuff Credit Card Application and Agreement ("Agreement") if the sales slips are to be incorporated.

Since the Tandy sales slips did not contain a reference to the Agreement, Martinez argues the two sets of documents, the Agreement and the sales slips, can not be looked at as one when determining whether a security agreement with an adequate description of collateral exists. (Defendant's Memorandum in Support of its Motion for Reconsideration at 4–5.) ("Martinez Memorandum") If either of Martinez's claims amounts to a "manifest error of law", the court must correct its prior Order and grant Martinez's Motion to Alter or Amend. *BNT Terminals*, 125 B.R. at 977 (citations omitted).

## A. *PROPER APPLICATION OF ILLINOIS LAW*

■ Martinez is correct in arguing that Illinois statutes and case law govern the present case. State law governs whether the parties have entered into a valid security agreement. *See In re Martin Grinding & Machine Works, Inc.*, 793 F.2d 592, 594 (7th Cir.1986), *citing Butner v. U.S.*, 440 U.S. 48,

54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). However, Martinez's assertion that this court did not properly consider Illinois law is flawed. The court based its analysis on the UCC provisions adopted by the State of Illinois as well as case law interpreting UCC provisions similar to those adopted in Illinois. (Memorandum Opinion at 93–94.) If Illinois case law is scarce on a particular issue and if the law of another jurisdiction is identical to Illinois law, a court may properly consider case law from other jurisdictions. *See Cooper v. Hinrichs*, 10 Ill.2d 269, 140 N.E.2d 293, 296 (1957).

■ In particular, Martinez argues that the court placed too much reliance on *In re Ziluck*, 139 B.R. 44 (S.D.Fla.1992). As Martinez admits, *Ziluck* involved a nearly identical factual setting and therefore is persuasive authority. Further, the relevant UCC provisions in Illinois and Florida are identical. *See* Fla.Stat.Ann. § 679.203(1)(a); 810 ILCS § 5/9–203(1)(a). Therefore, the court's reliance on *Ziluck* was appropriate. Finally, the court did not rely exclusively on *Ziluck* for any matter. For each of the court's conclusions citing *Ziluck*, at least one case interpreting Illinois law was also cited. (Memorandum Opinion at 94.) Thus, the court concludes it properly applied Illinois law and did not commit a manifest error of law by considering relevant holdings in other jurisdictions.

## B. *APPLICATION OF THE "COMPOSITE DOCUMENT THEORY"*

■ Martinez also argues that the court erroneously interpreted and applied the "composite document theory" as adopted by the Seventh Circuit in *In re Wambach*, 343 F.Supp. 73 (N.D.Ill.1972), *aff'd* 484 F.2d 572 (7th Cir.1973). The court's opinion did not explicitly rely on the "composite document theory" to find that a valid security agreement was created nor did it need to do so. Furthermore, to the extent that the court implicitly relied upon the "composite document theory," that reliance was justified and supported by the relevant case law.

First, the court held that a valid security agreement containing an adequate descrip-

tion of collateral existed on the basis of the Agreement alone. (Memorandum Opinion at 94.) The court did not deem it necessary to refer to the sales slips. Thus, the court relied on just one document, the Agreement, and had no cause to consider the "composite document theory." Further credence is lent to the court's conclusion by the fact that Martinez contemporaneously signed the Agreement and purchased the merchandise on February 1, 1991.

 Even assuming it was necessary to use the "composite document theory," as Martinez asserts, Martinez's proposition fails on a second ground. The "composite document theory" did not require that the Tandy sales slips contain a reference to the Agreement. Martinez attempts to impose a reference requirement on Tandy that is not found in the "composite document theory" as interpreted by existing case law.

Several of Martinez's cases did not mention or hint at a requirement that a reference from one document to another was necessary for the "composite document theory" to apply. *See In re Data Entry Service Corp.,* 81 B.R. 467 (Bankr.N.D.Ill.1988); *In re Tucker,* 36 B.R. 706 (Bankr.S.D.Ill.1984). In *Tucker,* a Sears security agreement containing language nearly identical to that of the Agreement was found to create a valid security agreement adequately describing the collateral. *Tucker,* 36 B.R. at 708.

Only where the sales slips themselves formed the basis of the security agreement was a reference from one document to another required by the court. *In re Bradel,* 1990 WL 86714 (Bankr.N.D.Ill.1990); *In re Hardage,* 99 B.R. 738 (Bankr.N.D.Tex.1989). The underlying credit agreements did not create security agreements because they were incomplete or not produced. *Bradel,* 1990 WL 86714 at *4; *Hardage,* 99 B.R. at 739–40. However, the sales slips did create security agreements because they incorporated the incomplete credit agreements by reference. Whatever information the sales slips may have been missing was incorporated from the credit agreements and together the documents formed a valid security agreement. *Bradel,* 1990 WL 86714 at *4; *Hardage,* 99 B.R. at 739–40.

Martinez relies extensively upon dicta contained in footnote 5 of *Bradel. Bradel,* 1990 WL 86714 at *4, *8 (even if the credit agreement was signed, it did not contain an adequate description of the collateral). However, in a later discussion of the adequacy of consideration, the *Bradel* court specifically allowed incorporation from inventory lists which made no reference to either the sales slips or the credit agreement. *Bradel,* 1990 WL 86714 at *7. Accordingly, it is not inconsistent for this court to allow Tandy to incorporate from the McDuff sales slips even though they did not mention the Agreement. *Bradel,* when properly read, does not support Martinez's proposition that the sales slips must refer to the Agreement.

*Matter of Anderson,* 23 B.R. 130 (Bankr. D.Neb.1982) provides the strongest support for Martinez's assertions. In *Anderson,* the sales slips specifically referred to the revolving charge agreement. *Matter of Anderson,* 23 B.R. at 131. However, the court never implied that the reference from the sales slips to the charge agreement was essential to finding that a security agreement existed. *Id.* The *Anderson* court did not reach the issue of whether a security agreement would have existed without a reference from the sales slips to the charge agreement. *Id.* Either the charge agreement or the sales slips alone may have been sufficient for the court to find a valid security agreement.

The remaining cases cited by Martinez concern the adequacy of collateral description and do not further Martinez's position. In both cases, the credit agreement alone created a security agreement and the only question was the adequacy of the collateral description. *In re Moody,* 62 B.R. 282, 285 (Bankr.N.D.Miss.1986); *In re Cawthorn,* 1 B.R. 267, 272–73 (Bankr.W.D.Va.1979). The courts allowed incorporation from the credit agreement to the sales slips but did not imply that a reference from one document to the other was essential. *Moody,* 62 B.R. at 285; *Cawthorn,* 1 B.R. at 272–73. Martinez's contention that the "composite document theory" required that the sales slips must make a reference to the Agreement is not supported by the case law. Therefore, any implicit reliance that the court may have placed

**98**

upon the "composite document theory" was not in error.

Finally, Martinez attempts to persuade the court that the transaction between the parties should be viewed as two separate transactions. Martinez's effort to separate the execution of the Agreement and the purchase of the merchandise would be more persuasive if both occurrences had not taken place on the same day. The first transaction, signing the Agreement, supposedly can not constitute a security agreement because there was not any collateral to describe at this point. Martinez did not provide any case law in support of this proposition and the court finds it untenable. *See In re Allen,* 395 F.Supp. 150, 151 (E.D.Ill.1975) (all of the steps may not be contemporaneous, but once all have occurred a valid security interest is formed). Therefore, even if the transaction is viewed as two separate transactions, the transactions may be taken together and found to create a valid security agreement.

## V. *CONCLUSION*

Martinez's Motion to Alter or Amend is denied. The McDuff Credit Card Application and Agreement created a valid lien on property purchased by Martinez with his McDuff's credit card.