**In re Kevin Mark SHIREL, and Michelle Kay Shirel, Debtors.**

**No. 99–16949 BH.**

United States Bankruptcy Court, W.D. Oklahoma.

July 17, 2000.

H. Allen Johnson, Lawton, OK, for Debtors.

Laurie R. West, Oklahoma City, OK, for Respondent.

### MEMORANDUM OF DECISION DETERMINING THAT RESPONDENT DOES NOT HAVE A SECURITY INTEREST IN PROPERTY OF THE DEBTORS

RICHARD L. BOHANON, Bankruptcy Judge.

The central issue raised by this motion to avoid a lien is whether or not the respondent has a security interest in property of the debtors.[1]

Kevin Shirel applied for a credit card from Sight'N Sound Appliance Centers, Inc., ("Sight and Sound" or "respondent").[2] The credit application purports to become the agreement of the parties and is a barely legible, seven page, single spaced, small print document. Shirel signed it on the first page.

The form contains a statement that the respondent will have a security interest in all "merchandise" purchased with the credit card. This statement is located approximately four pages into the application.

Shirel's credit was approved and he purchased a new refrigerator using the credit card.[3]

Several months later the debtors filed their bankruptcy petition listing the

1. While the motion was brought as one to avoid a nonpossessory, nonpurchase-money security interest in an exempt refrigerator the issue becomes whether or not there is a security interest at all. Accordingly, the motion is treated as a request to determine the validity of a lien under Rule 7001, F.R.Bankr.P.

2. The record is unclear as to the proper identity of the respondent. The following names appear in the papers: Sight'N Sound TV and Appliance Center; Sight and Sound; House of Sight and Sound; Monogram Credit Card Bank of Georgia; and Consumer Retail Credit L.L.C. The Oklahoma Secretary of State identifies the name of an Oklahoma corporation as "Sight'N Sound Appliance Centers, Inc." and, for purposes of this decision, it is assumed that this entity is the respondent.

3. Shirel also signed a purchase receipt which merely states, "I agree to pay the above total amount according to the card issuer agreement." Respondent doesn't contend that this statement operates to create a security interest in the refrigerator.

remaining credit card debt as unsecured and claiming the refrigerator exempt under Oklahoma law. OKLA.STAT. tit. 31 § 1 (1999).[4] No timely objections were made to the claim of exemption.

The debtors then moved to avoid the lien on the refrigerator pursuant to 11 U.S.C. § 522(f)(1)(B)(i), which states, "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption ... if such lien is ... a nonpossessory, nonpurchase-money security interest in any ... appliances."

If the respondent has a security interest in the refrigerator, it unquestionably secures a purchase-money debt and is, therefore, unavoidable. Thus, the issue is does it have a security interest at all. The answer then turns on whether or not the purported security agreement is legally sufficient to create a security interest in the refrigerator.

In its papers, respondent now objects to the claim of exemption. In addition, it argues strenuously that the debtors improperly listed the debt as unsecured.[5]

## I. DISCUSSION

### A. Oklahoma Law Applies

Although neither party raised the issue, it first is necessary to decide which states' law applies. The contract form contains a choice of law provision stating that Georgia law controls.

Aside from this provision, there is absolutely no evidence that anything related to this transaction took place in Georgia. See OKLA.STAT. tit 12A § 9–105 (1999) (allows parties to select which states' law will ap-

ply so long as the selected state bears a reasonable relationship to the transaction); See also RESTATEMENT (SECOND) OF CONFLICT OF LAWS: CONTRACTS § 187(2)(a) (1988).

■ In their briefs, both parties argue based on Oklahoma law, which indicates their consent to abandon the choice of law provision. This, coupled with the absence of evidence showing a relationship between the transaction and Georgia, leads this court to conclude that the choice of law provision should be given no consideration.

### B. Contract of Adhesion

■ It must be noted from the outset that this agreement is one of adhesion. The Oklahoma Supreme Court, in *Max True Plastering Company v. United States Fidelity and Guaranty Company, et al.*, 912 P.2d 861 (Okla.1996), stated that "[a]n adhesion contract is a standardized contract prepared entirely by one party to the transaction for the acceptance of the other. These contracts, because of the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected on a 'take it or leave it' basis without opportunity for bargaining."

■ In this state, such "contracts are interpreted most strongly against the party preparing the form." *Grimes v. Swaim*, 971 F.2d 622 (10th Cir.1992) (quoting *Wilson v. Travelers Ins. Co.*, 605 P.2d 1327, 1329 (Okla.1980)); *See also Continental Federal Savings & Loan v. Fetter*, 564 P.2d 1013, 1019 (Okla.1977). Therefore, the agreement here must be interpreted using this rule of construction.[6]

■ Any inferences drawn from contractual ambiguity must be interpreted

---

**4.** Oklahoma has enacted legislation which prohibits those domiciled in the state from electing the federal exemptions contained in 11 U.S.C. § 522. *See* OKLA.STAT. tit. 31 § 1(B). The authority for a state to "opt-out" of the federal exemptions is contained in 11 U.S.C. § 522(b).

**5.** Sight and Sound claims that the property was subject to its purchase money security

interest and that the Shirels should have listed the debt as secured on the appropriate schedules. Under the circumstances the relevance of this argument is unclear.

**6.** This is simply an application of the common law rule of *contra proferentum*. RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a (1988). It states that, "where one party chooses the terms of a contract, he is likely to provide

against the drafter. In other words, if there are two or more possible interpretations as to whether a valid security agreement exists, the one most favorable to the debtor will be adopted.[7]

### C. Creditor Time Barred From Objecting To Exemption

In its response, Sight and Sound argues, for the first time, that the debtors should not be entitled to claim the refrigerator as exempt under Oklahoma law.

 Rule 4003(b), of the Federal Rules of Bankruptcy Procedure, provides that any objection to a claim of exemption must be filed within 30 days after the conclusion of the meeting of creditors which is held pursuant to 11 U.S.C. § 341. Therefore, since no objection to the claim was brought within that time, Sight and Sound may no longer challenge the debtors' claim of exemption.[8] *See Taylor v. Freeland & Kronz, et al.*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

### D. Language Does Not Sufficiently Identify The Collateral

 The record indicates that Shirel used his Sight and Sound credit card to finance the full purchase price of the refrigerator. Therefore, if a security interest exists, it is clearly a purchase money security interest. *See* OKLA.STAT.tit 12A § 9–107 (1999). As such, the debtors' motion to avoid the lien under section 522(f) would fail.

The central issue here, however, is whether or not the agreement is legally sufficient to grant a security interest at all.[9] In that connection I must decide whether the language included in the credit application is sufficient to grant a security interest under the Oklahoma Uniform Commercial Code.

Again, it must be noted that since this is an adhesion contract, all ambiguous language will be construed strongly against the drafter.

 Neither the Oklahoma Supreme Court, nor the Court of Appeals for this Circuit has indicated what precise language is required to create a security interest in goods purchased with a credit card.[10] Therefore, I will evaluate the plain language of the Uniform Commercial Code

more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party." RESTATEMENT (SECOND)OF CONTRACTS § 206 cmt. a (1988)

**7.** *See* 5 CORBIN ON CONTRACTS: INTERPRETATION § 24.27 (1998).

**8.** In any event, since a refrigerator is reasonably necessary for the maintenance of a household, it is clearly exempt under OKLA. STAT.tit 31 § 1(A)(3) (1999).

**9.** It is unclear whether Shirel genuinely assented to the security agreement.

Some scholars have opined that under the objective theory of contracts the drafter of a long convoluted form agreement, such as the one here, reasonably expects the consumer to sign without reading or understanding the agreement. In such a case one could argue that the consumer is only assenting to the central terms such as price, interest and minimum payment. Under this argument, the only way to have mutual assent to the obscure terms would be to emphasize and explain them to the consumer. *See* Michael I. Meyerson, *The Reunification of Contract Law: The Objective Theory Of Consumer Form Contracts*, 47 U. MIAMI L. REV. 1263.

Although this argument might be persuasive, the record here is devoid of any evidence regarding whether or not there was genuine assent. To decide either way would be mere assumption.

**10.** OKLA.STAT.tit 14A § 2–310 sets forth a list of things that must be provided to a consumer prior to opening a revolving credit line. It states that if the seller seeks to retain a security interest in the goods purchased, a copy of the statement must be given to the consumer. However, this statute does not in any way

and determine whether or not this credit card application is a security agreement. *See In re Horwitz*, 167 B.R. 237 (Bankr. W.D.Okla.1994).

Oklahoma has adopted Article 9 of the *Uniform Commercial Code*. *See* OKLA. STAT.tit 12A § 9–101 *et seq.* This statute defines a security agreement as "an agreement which creates or provides for a security interest." OKLA.STAT.tit 12A § 9–105(h).

The formal requirements are set forth in section 9–203. The relevant provision states that, "a security interest is not enforceable against the debtor or third parties ... unless ... the debtor has signed a security agreement which contains a *description* of the collateral." [emphasis added]

Section 9–110 of the UCC clarifies how the word "description" should be interpreted. It states that, "[f]or the purposes of this Article any description of personal property ... is sufficient whether or not it is specific if it *reasonably identifies* what is described." [emphasis added]

■■■ While the UCC encourages courts to interpret "description" liberally so as to avoid requiring a precise detailed description, such as a serial number, the agreement must at minimum "do the job assigned."[11] That job is to sufficiently describe the collateral so that a third party could reasonably identify the items which are subject to the security interest.[12]

■■■ The credit application here states that the card issuer, "will have a purchase money security interest in all merchandise purchased on [the] account until such merchandise is paid in full." The description "all merchandise" is vague, broad, and fails to sufficiently identify a refrigerator.[13]

Since there are several interpretations of what "all merchandise" could mean, I must seek to find the interpretation which is most favorable to the debtor. There is a need, however, to balance the UCC's policy of moving away from the rigid requirements of a description of the collateral, with the need to interpret an adhesion contract in a way favorable to the debtor.

Although the UCC encourages a liberal view concerning the description of collateral, the phrase "all merchandise" is, quite simply, too liberal, too imprecise and is not a description. This court is not implying that the security agreement for a refrigerator be elaborately detailed, such as, *e.g.* "the almond, 18 cubic foot, side-by-side, refrigerator with ice maker serial # 1234." However, it must at least identify the type or class of collateral. Thus, a sufficient description might have been merely "a refrigerator."

This is in accord with the dictionary definition of "description" which is "[a] statement which describes, sets forth, or portrays; a graphic or detailed account of a person, thing, scene, etc." The verb "describe" means "[t]o set forth in words,

negate the requirements needed in order to create a security agreement under Article 9.

**11.** The Official Comment to Article 9–110 provides that "the purpose of description of collateral ... is evidentiary. The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible identification of the thing described." U.C.C. § 9–110 cmt. 2 (1998).

**12.** *See Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700, 703 (10th Cir.1972). The Court of Appeals for the Tenth Circuit stated that "in order for a security agreement to be effec-

tive it must contain language which specifically creates or grants a security interest in the collateral described." The court also held that the security agreement was to be construed strictly against the drafters.

**13.** Some courts have held that such language is an adequate description of the collateral for the purpose of creating a security interest, but this court disagrees. *See Tandy Credit Corporation v. Martinez,* 179 B.R. 90 (Bankr.N.D.Ill. 1994); *See also In re Ziluck,* 139 B.R. 44 (S.D.Fla.1992). There do not appear to be any such cases from the Oklahoma Supreme Court or the Court of Appeals for the Tenth

written or spoken, by reference to qualities, recognizable features, or characteristic marks; to give a detailed or graphic account of." THE OXFORD ENGLISH DICTIONARY VOL. IV, 511—512 (2nd ed.1998). It is plain to see that the noun "merchandise" is not a "description" within the common usage of the term for it does not set forth a graphic or detailed account of the purported collateral.

 It is understandable for a creditor to desire one catchall phrase which creates a security agreement in every possible situation. However, in doing so, it may not ignore one of the primary reasons for creating a security agreement, which is to give notice to a third party. This can only be achieved by describing what property is subject to the security interest.

Oklahoma courts have held that the following were sufficient descriptions for section 9–110 purposes: "laundry equipment" when referring to a washing-machine;[14] "all machinery," and "paving equipment" to describe a wheel loader;[15] and the words "pickup truck" were held sufficient even though the borrower owned two pickup trucks.[16]

A reasonable third party would understand those descriptions alone, with no need to inquire further. One could be reasonably certain, based on those descriptions, of what collateral is secured. This is not so with the description "all merchandise." This description could conceivably cover any type of item.

*II. Conclusion*

In conclusion, no reasonable third party would understand that a security interest was created in the refrigerator by merely looking to the description itself. By examining this adhesion contract and construing it strongly against Sight and Sound, this

court can only conclude that the word "merchandise" does not "sufficiently identify" the collateral at issue here. Thus, the purported security agreement is void as a matter law.

Accordingly, it is determined that respondent does not have a security interest in the refrigerator.

---

Circuit. As such, I must decide, on my own, whether "merchandise" sufficiently describes the collateral.

**14.** *In re Buttram,* 2 B.R. 92 (Bankr.N.D.Okla. 1979).

**15.** *Consolidated Equipment Sales, Inc. v. First Bank & Trust Co. of Guthrie,* 627 P.2d 432 (Okla.1981).

**16.** *Security State Bank of Wewoka v. Dooley,* 604 P.2d 153 (Okla.App.1979).