In re Jonathan C. OSTLING, Debtor.

Al Myers and Paulyn Myers, Plaintiffs,

v.

Jonathan C. Ostling, Defendant.

Bankruptcy No. 98–57850–WS.
Adversary No. 99–4032.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

July 17, 2001.

Russell R. Wise, Southfield, MI, for Plaintiffs.

Thomas A. Marcucci, Troy, MI, for Defendant.

### DECISION and ORDER

BURTON PERLMAN, Bankruptcy Judge.

Plaintiffs in this adversary proceeding seek judgment against defendant, a Chapter 7 debtor in this court. Plaintiffs also seek that any such judgment be held non-dischargeable. Defendant's bankruptcy case was filed jointly with his wife Melaia. Melaia is not a party to this proceeding. Melaia in fact has been convicted of criminal fraud and is presently incarcerated. In the present suit, plaintiffs assert that defendant should be held liable for Melaia's fraud.

The proceeding came on for trial. At the close of plaintiffs' case, defendant moved for a dismissal. The court reserved decision on the motion and defendant then put on his case. At the conclusion of the trial, the court reserved decision, stating at the time that the court was unprepared to rule on the admissibility of testimony by John E. Meiers, an officer in a sheriff's department, and Brian Young, an FBI agent. Plaintiff offered the testimony of both these witnesses as expert witnesses. Defendant objected to their testimony on grounds that they would be based entirely on hearsay evidence.

In the case of both witnesses, plaintiff elicited testimony that they had been involved in an investigation of defendant's wife, Melaia, defendant's co-debtor in the related bankruptcy case. Each testified to his investigation into Melaia's activities and affairs and related that she had been criminally prosecuted and was presently incarcerated for her crimes. The two officers clearly were testifying to facts of which they had personal knowledge up to this point. Furthermore, there is no question that both were experienced, knowledgeable criminal investigators. Each testified that at the time of the investigation of Melaia, they also interviewed defendant. Both testified that defendant was not arrested at the time of the investigation as was Melaia, nor was he ever prosecuted as a result of their investigations.

Detective Meiers was finally asked on his direct examination his opinion whether

defendant had been involved in his wife's fraud on plaintiffs, and his response was that defendant must have had knowledge of it. Similarly, Agent Young was asked his opinion whether defendant would know of the actions of his wife with respect to plaintiffs and Agent Young responded that in his opinion defendant would know.

■ Addressing first defendant's objection that the testimony of Detective Meiers and Agent Young is inadmissible because based on hearsay evidence must be overruled. There is no doubt that experts generally offer opinion evidence based upon hearsay evidence, that is, materials not of their personal knowledge such as text books and the like. *See Mannino v. International Manufacturing Company,* 650 F.2d 846 (6th Cir.1981). But this cannot be the end of the matter. Detective Meiers and Agent Young did not testify as experts. True, both are experienced knowledgeable police officers, and as to this they are certainly qualified experts. Their opinions, however, with respect to defendant's knowledge of his wife's activities did not have a basis in that expertise. The fact is that at the trial both were fact witnesses and the opinions elicited from them were not those of experts, but instead the opinions from them were opinions of fact witnesses.

■ The opinions of fact witnesses are not *ipso facto* inadmissible, but as stated in Federal Rule of Evidence 701, may be admissible if they are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." In their case in chief, the fact in issue as to which plaintiffs sought the opinions of Meiers and Young was whether defendant had knowledge of his wife's activities vis a vis plaintiffs. In their investigation, Meiers and Young thoroughly explored Melaia's activities.

They visited the home occupied by Melaia and defendant. They interviewed defendant. It was the opinion of both of them that defendant did have knowledge of his wife's activities. The court overrules the objection to their evidence and accords some weight to their opinions.

We find the following facts. Plaintiffs built a residence at 336 Rochester Road ("the residence") in 1996 as an investment, and intended to either sell or rent it. They placed an ad in the paper, to which the Ostlings responded. The Ostlings were interested in renting the residence and filled out an application. Plaintiffs submitted the application to a credit firm. They were advised by the credit firm that Melaia's credit rating was shaky, while that for defendant was acceptable. Plaintiffs then accepted the Ostlings' application. The Ostlings moved in in July, 1996, with their three children. The arrangement was rental with an option to purchase. (Defendant's Exhibit A is the documentation relating to this transaction and is somewhat confusing. The Exhibit contains Agreement of Sale signed by defendant and dated June 28, 1996. The Exhibit also includes a lease dated June 22, 1996. Finally, the Exhibit contains a Warranty Deed to the premises purportedly transferring title to Melaia Ostling, and dated August 13, 1997. No explanation for these documents appears in the testimony other than what has already been stated.)

The rental at the residence was $1,400.00 per month. Defendant was employed at Daimler Chrysler with annual earnings of some $80,000.00.

The trial record includes at defendant's Exhibit B, a land contract signed by plaintiffs and Melaia (but not defendant) dated August 14, 1997.

The record also contains at defendant's Exhibit G, a Rental Agreement for the

premises dated July 10, 1996, signed by plaintiffs as well as both Ostlings. Attached to defendant's Exhibit G is an addendum dated April 4, 1997, signed by plaintiffs and Melaia only.

It is undisputed that during the year 1997 plaintiffs lent Melaia Ostling a substantial amount of money, and that while extracting this money from plaintiffs, Melaia misrepresented herself as belonging to a wealthy royal Tongan family. This began in January of 1997 and continued until Christmas of 1997 when plaintiffs became aware that they were being defrauded. All monies were paid by plaintiffs to Melaia Ostling, and none was given to defendant. While there is some dispute as to damages here in the event that plaintiffs are successful, it is not disputed that Melaia Ostling was sentenced to prison for 20 months after pleading guilty to wire fraud in federal court, and an order of restitution was entered for $467,407.00.

Defendant and his wife were having marital difficulties at the time they occupied plaintiffs' residence and are now divorced.

It is the position of plaintiffs that defendant owes a debt to plaintiffs and that debt is nondischargeable. In opening argument, plaintiffs' counsel said that the theory under which plaintiffs were proceeding was that Melaia Ostling had defrauded them and liability should be imposed upon defendant because he acted in concert with his wife. Plaintiffs say that nondischargeability in this case can be found under § 523(a)(2), (4), or (6). Neither party has provided the court with a memorandum of law.

1. Section 523(a)(2)(A).

■ With respect to plaintiffs' claim under § 523(a)(2)(A), actual fraud, that there was a husband and wife relationship in and of itself is insufficient to warrant the impu-

tation of a spouse's fraud to the other spouse. *In re Carro,* 210 B.R. 13 (Bankr. D.P.R.1997). The cases we have found in which such imputation is discussed, and where one spouse is held liable for the acts of the other, involve a legal relationship in addition to the marriage. *In re Smith,* 98 B.R. 423 (Bankr.C.D.Ill.1989) (holding wife's debt nondischargeable because wife deemed to be an agent of husband); *In re Surls,* 240 B.R. 899 (Bankr.W.D.Mo.1999) (holding wife liable for husband and his corporation's debt under the alter ego theory).

■ In the absence of a relationship additional to the marriage, plaintiffs must show that defendant himself is liable pursuant to the usual requirements to make out a fraud nondischargeability case, to wit:

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *See Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir. 1993). In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Further, exceptions to discharge are to be strictly construed against the creditor. *See Manufacturer's Hanover Trust v. Ward (In re Ward),* 857 F.2d 1082, 1083 (6th Cir. 1988).

*Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998).

In this case, as plaintiffs' presentation in its evidence makes clear, the proximate cause of their loss was the acts of Melaia. All of the money, as to the loss of which plaintiffs complain, was given to Melaia. In their case-in-chief, plaintiffs' premise was that defendant acted in concert with his wife in defrauding plaintiffs by reenforcing Melaia's claim to be Tongan royalty. But it is not shown in the evidence that defendant *"obtained money* through a material misrepresentation," and therefore plaintiffs have not made out a case under § 523(a)(2)(A) against defendant.

█ In addition, the facts in this case lead the court to conclude that plaintiffs cannot satisfy the "justifiable reliance" element of a § 523(a)(2)(A) case. In *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the U.S. Supreme Court interpreted the content of the term "fraud" in the statutory section with which we are dealing. Where the conventional interpretation of the nature of reliance required in a fraud case under the Bankruptcy Code was "reasonable reliance," the *Field* case changed that requirement to "justifiable reliance." This represented a lightening of the burden on plaintiff from the necessity of showing that his reliance was that of a reasonable person to merely being "justifiable." In explaining this view, the Supreme Court said:

> The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he made an investigation."

*Field*, 516 U.S. at 69, 116 S.Ct. 437, *citing* Restatement (Second) of Torts (1976) at § 540.

The Court also stated the limitation of justifiable reliance:

> [i]t is only where, under the circumstances, the facts should be apparent to one of his [the plaintiff's] knowledge and intelligence from a cursory glance, *or he has discovered something which should serve as a warning that he is being deceived* that he is required to make an investigation of his own. (Emphasis added.)

*Field*, 516 U.S. at 71–72, 116 S.Ct. 437, *quoting* W. Prosser, Law of Torts, § 108, p. 718 (4th Ed.1971).

█ In the case *sub judice* plaintiff Pauline Meyers testified that during her dealings with Melaia in the spring or summer of 1997, she was motivated to consult with an attorney regarding her dealings with Melaia. Her attorney recommended that she investigate Melaia, yet plaintiffs decided to ignore this recommendation. This conduct falls squarely within that which the Supreme Court held constitutes the limit of justifiable reliance. While this conduct related to Melaia, and we are here considering the claim, not against her, but against her husband, because plaintiffs seek to impute the fraud of the wife to the husband, we conclude that there is an absence of justifiable reliance with respect to defendant as well.

Because plaintiffs have failed to prove that debtor obtained money, and that plaintiffs cannot satisfy the justifiable reliance element of a fraud case, defendant's motion to dismiss plaintiffs' claim under § 523(a)(2) at the close of plaintiffs' case is granted, and the same conclusion, that plaintiffs' claim under § 523(a)(2)(A) should be dismissed, is reached after trial.

2. Section 523(a)(4).

█ The Bankruptcy Code here provides:

## § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -

\*   \*   \*   \*   \*   \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

\*   \*   \*   \*   \*   \*

In order to make out a claim for "fraud or defalcation while acting in a fiduciary capacity," the law is well established that there must be an express trust in order to show the requisite fiduciary relationship. *In re Krizanic*, 255 B.R. 688 (Bankr. E.D.Mich.2000). There is no evidence of an express trust between defendant and plaintiffs. Nor does the evidence offered by plaintiffs in their case-in-chief show that the elements of embezzlement or larceny were present with regard to defendant's conduct in his dealings with plaintiffs.

Accordingly, defendant's motion to dismiss plaintiffs' claim under § 523(a)(4) at the close of plaintiffs' case is granted, and the same result is reached after trial.

3. Section 523(a)(6).

Here the Bankruptcy Code provides:

## § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -

\*   \*   \*   \*   \*   \*

(6) for willful and malicious injury by the debtor to another entity or .to the property of another entity;

\*   \*   \*   \*   \*   \*

In applying this statutory language, the court must do so in the light of *Kawaau-hau v. Geiger (In re Geiger)*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The *Geiger* decision has been interpreted in this Circuit in *In re Markowitz*, 190 F.3d 455 (6th Cir.1999). Prior to the *Geiger* case, the controlling law in this Circuit was to be found in *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987). There, the phrase "willful and malicious" was held to mean that a conclusion of nondischargeability could be reached where one intends an act regardless of whether he intends the consequence. That formulation was rejected in *Geiger*.

In *Geiger*, the question was dischargeability of a debt arising from a damages award for medical malpractice. There the fact was that Dr. Geiger intentionally rendered inadequate medical care to the plaintiff, his patient. While Dr. Geiger's actions were below professional standards, it was not shown that in his acts he intended to cause the injury which resulted to the plaintiff, and therefore Dr. Geiger's debt to the plaintiff was held dischargeable.

The *Markowitz* case in this Circuit involved a claim for legal malpractice. There, the bankruptcy court had held plaintiff's claim which had been established at a jury trial in the state court was nondischargeable. The Sixth Circuit reversed the bankruptcy court, holding that the jury's response to a special interrogatory in the affirmative to a question whether Markowitz's *decision-making* was intentional or willful was insufficient to establish nondischargeability. It did not answer the question mandated by *Geiger*, whether Markowitz intended to cause injury. The test articulated by the Sixth Circuit in *Markowitz* (footnote 10) is:

He [defendant] must will or desire harm, or believe injury is substantially

certain to occur as a result of his behavior.

*Markowitz,* 190 F.3d at 465 n. 10.

■ Applying this test to the evidence presented at the trial, we conclude that plaintiffs are entitled to judgment against defendant, and the debt should be held nondischargeable. Melaia, defendant's wife, misrepresented herself to plaintiffs as belonging to a wealthy royal Tongan family. Melaia further represented that she or her family owned an extensive condominium development in Michigan and she was prepared to give the plaintiffs a very lucrative arrangement to manage it. On the strength of these representations, plaintiffs lent Melaia a great deal of money. None of the representations made by Melaia to plaintiffs were true.

Defendant knew of Melaia's fraudulent activities. While there was evidence of marital discord, he continued to live in the house with Melaia and their children. Further, there is the evidence by Detective Meiers and Agent Young that their investigations of the affairs of the Ostlings left them with the opinion that defendant knew what Melaia was doing. In addition to having knowledge of the acts of Melaia, defendant overtly reinforced her in her conduct. When Melaia returned from a trip to Tonga, he said to plaintiff Paulyn Myers that it was good that Melaia was to inherit Tongan wealth, though it was not true that she had wealthy Tongan relatives from whom she would inherit. On two occasions defendant stated to plaintiffs that they would have an opportunity to meet Melaia's wealthy mother. On neither occasion did the meeting occur. The statements were made by defendant though he knew that Melaia's mother was neither wealthy nor present in the United States. In connection with Melaia's misrepresentations about owning condominiums, and that plaintiffs could manage them, defendant further reinforced Melaia's fraud. He did so by advising them that they ought to form a Subchapter S corporation, though he knew that the plaintiffs would not become managers of Melaia's nonexistent condominiums, and therefore would have no need for such a strategy.

The testimony of plaintiff Paulyn Myers of misleading statements by defendant was corroborated by other witnesses. Robert W. Roberts, who did remodeling work for the Ostlings at their residence, testified that defendant told him that his wife was from a wealthy Tongan family. Joseph Israel, a builder consulted by the Ostlings, testified that defendant represented to him that his wife came from a wealthy royal Tongan family, and that her mother owned a shipping company.

In view of this evidence we conclude that defendant knew that injury to plaintiffs was "substantially certain to occur as a result of his behavior," and therefore that the damages that plaintiffs suffered are nondischargable.

At the trial, plaintiff presented evidence that by reason of the acts of Melaia and defendant, plaintiffs had suffered damages in the amount of $447,407.00, money plaintiffs gave to Melaia. Defendant offered exhibits purporting to show benefits to plaintiffs' residence paid for by Melaia which defendant asserts should be deducted from plaintiffs' figure, but it appears that the source of those exhibits is not shown and well may be from argumentative material prepared by Melaia. We cannot credit it.

■ In Restatement (Third) of Torts: Apportionment of Liability § 15, it is stated:

When persons are liable because they acted in concert, all persons are jointly and severally liable for the share of com-

parative responsibility assigned to each person engaged in concerted activity.

This is the law in Michigan. *See Gorelick v. Department of State Highways,* 127 Mich.App. 324, 339 N.W.2d 635 (1983); *Margain v. Maize & Blue Properties, Inc.,* 753 F.2d 47 (6th Cir.1985); *Federal Savings & Loan Ins. Corp. v. Quinlan, et al.,* 678 F.Supp. 174 (E.D.Mich.1988).

Accordingly, we hold that plaintiffs are entitled to judgment against defendant in the amount of $447,407.00, and the debt is nondischargeabie.

So Ordered.