**In re Don ELLIS and Janice Ellis, Debtors.**

**Southwest State Bank, Plaintiff,**

**v.**

**Don Ellis and Janice Ellis, Defendants.**

Bankruptcy No. 01–10028–BH.
Adversary No. 01–1185–BH.

United States Bankruptcy Court,
W.D. Oklahoma.

Jan. 8, 2004.

Michael D. Denton, Denton Law Firm, Mustang, OK, for Plaintiff.

Margaret Travis, Kline, Kline, Elliott, Castleberry & Bryant, P.C., Oklahoma City, OK, for Defendants.

*MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

RICHARD L. BOHANON, Bankruptcy Judge.

### Background

This adversary proceeding arises out of a series of loans made by the Plaintiff ("Bank") to the Defendants. Many of these loans are cross-collateralized with others. The Bank seeks an exception to the Defendants' discharge pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).

The Defendants filed separate motions for summary judgment, and because different issues are involved for each, they will be discussed separately.

The parties agree that the applicable law is the repealed Article 9 of the Oklahoma Uniform Commercial Code, rather than the Revised Article 9.

For reasons explained below, the Court grants in part and denies in part the Defendants' motions for summary judgment.[1]

### I. Mr. Ellis's Motion for Partial Summary Judgment

Don Ellis moves for partial summary judgment on claims brought under § 523(a)(4) and § 523(a)(6).[2] He contends that he had no fiduciary duty to the Bank that would give rise to a claim of defalcation while acting in a fiduciary capacity and that he did not grant the Bank a security interest in certain collateral that the Bank asserts he sold without its consent.

### A. Claim Under § 523(a)(4): "Fiduciary Capacity"

▮ Mr. Ellis contends that he is entitled to summary judgment as a matter of law on the § 523(a)(4) claim because he did not owe the Bank a fiduciary duty for purposes of that section. The Bank, on the other hand, asserts that virtually every security agreement signed by Mr. Ellis contained language that created a fiduciary relationship. The language quoted by the Bank reads as follows:

Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

▮ Even though this provision appears in several security agreements signed by Mr. Ellis[3] and even though it uses the phrase "in trust," it is insufficient as a matter of law to create a fiduciary relationship for purposes of § 523(a)(4). For purposes of § 523(a)(4), "fiduciary capacity" is limited to express or technical trusts; it

---

1. At the outset, the Court notes that many of the documents submitted by the Bank in opposition to the Defendants' motions contain small print that is difficult to read. Also, many are incomplete because pages are missing or the ends of pages were cut off by the copier. Most importantly, the court file does not contain Exhibit 14 to the Bank's opposition to Mr. Ellis' motion ("Mr.Ellis"); however, the Bank makes reference to this exhibit. Therefore, Exhibit 14 is not considered.

2. Mr. Ellis does not move for summary judgment on the claim under § 523(a)(2). This claim remains for trial.

3. Due to the incomplete and illegible nature of the exhibits, the Court was unable to find this exact provision in every security agreement. However, even if this provision is in every security agreement, it is insufficient to create a fiduciary duty as explained above.

does not include *ex maleficio* trusts, which are imposed due to the very act of wrongdoing out of which the debt arises. *See Tway v. Tway (In re Tway),* 161 B.R. 274 (Bankr.W.D.Okla.1993).

 "Fiduciary capacity" in § 523(a)(4) is intentionally narrow so that it does not apply to ordinary commercial relationships such as a debtor-creditor relationship. Use of terms such as "trust" or "in trust" are insufficient by themselves to create an express or technical trust. *See American Honda Fin. Corp. v. Tester (In re Tester),* 62 B.R. 486, 491 (Bankr. W.D.Va.1986). Rather, the Court must look at the substance of the agreement to determine if it fits the narrow confines of § 523(a)(4). *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 334, 55 S.Ct. 151, 79 L.Ed. 393 (1934) ("The substance of the transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust.").

Here, this provision does not impose a fiduciary duty; it simply creates a debtor-creditor relationship. Indeed, a majority of courts hold that a security agreement such as the instant one does not create an express or technical trust required to except a debt from discharge under § 523(a)(4). *See Bombardier Credit, Inc. v. Theis (In re Theis),* 109 B.R. 474, 475 (Bankr.M.D.Fla.1989). This provision is the only mention of a trust relationship and is boilerplate language contained in a multi-page document. *See Barclays American/Business Credit, Inc. v. Long (In re Long),* 44 B.R. 300, 305 (Bankr.D.Minn.1983)(holding that a securi-

ty agreement that contained trust-like language did not create a fiduciary duty under § 523(a)(4) where that language was the only mention of a trust relationship and where it was boilerplate language in a security agreement). Even the name of the documents here indicates that the parties had no intent to create anything more than an ordinary commercial relationship of debtor and creditor. The documents are entitled "Commercial Security Agreement." Considering the substance of the security agreements, the Court holds that they did not impose a fiduciary duty as required by § 523(a)(4).

Thus, the Court must grant summary judgment on the claim under § 523(a)(4) in favor of Mr. Ellis since, as a matter of law, he was not acting in a fiduciary capacity.

### B. Claim Under § 523(a)(6): Crops and Crop Proceeds/Payments

 The next issue is whether the Bank holds a security interest in the crops and crop proceeds/payments of Mr. Ellis.[4] Mr. Ellis contends that the Bank has no security interest in crops and crop proceeds/payments because it failed to adequately describe the crops, and the Bank disagrees. If the Bank has no security interest in the crops and crop proceeds/payments, then Mr. Ellis could not have caused it an injury when he allegedly sold them without its permission.

Mr. Ellis contends that the Bank has no security interest in the crops or crop proceeds/payments because the security agreement that purports to grant the Bank an interest in crops is technically defective for it does not reasonably describe the land upon which the crops were grown. *See* 12A O.S. § 9–203(1) (repealed and superseded by Revised Article 9, ef-

---

4. The papers refer to both "crop proceeds" and "crop payments." It is assumed that the

parties intended the terms to be used interchangeably.

fective July 1, 2001).[5] In support of this argument, Mr. Ellis points to security agreement dated January 9, 1998, for a loan in the amount $15,199.05 ("Exhibit 9").

Exhibit 9 contains a section that defines "Collateral," and the relevant portions of that section include the following language:

> **Collateral.** The word "Collateral" means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
>
> **All general intangibles and crops**
>
> In addition, the word "Collateral" includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
>
> \* \* \* \* \* \*
>
> (c) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section or appurtenant to any of the lands or operations of Grantor . . . .
>
> \* \* \* \* \* \*
>
> (f) All crops and crop products, whether stored, planted, growing or to be grown by Grantor . . . .

(Ex. 9.)(emphasis in original). Nowhere in Exhibit 9 is there any type of description of the land. Indeed, the Bank concedes that Exhibit 9 contains no legal description of the land.

This omission is fatal for the Bank for § 9–203(1)(a) clearly requires a description of the land upon which crops are to be grown for there to be a valid security interest in crops.[6] A description of real property is sufficient "if it reasonably identifies what is described." 12A O.S. § 9–110 (repealed and superseded by Revised Article 9, effective July 1, 2001). Although "description" is to be interpreted liberally, a description must "describe the collateral so that a third party could reasonably identify the items which are subject to the security interest." *In re Shirel*, 251 B.R. 157, 162 (Bankr.W.D.Okla.2000).

The Oklahoma Supreme Court explained that:

> Although metes and bounds or other legal descriptions are the best possible descriptions, we do not specifically require same and hold that any description which reasonably identifies the 'real estate' is sufficient to meet 'notice filing' theory of the Uniform Commercial Code.

*First Nat'l Bank of Atoka v. Calvin Pickle Co.*, 516 P.2d 265, 268 (Okla.1973). In *Calvin Pickle Co.*, the bank claiming a security interest in a farmer's crops sought to recover from the purchaser of the crops. The issue was whether the description of the collateral as "All crops for the 1967

---

**5.** The relevant part of the § 9–203(1) provides:

> [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
>
> (a) . . . the debtor has signed a security agreement which contains a description of the collateral, and in addition, *when the security interest covers crops growing or to be grown . . . a description of the land concerned.*

12A O.S. § 9–203(1) (repealed and superseded by Revised Article 9, effective July 1, 2001) (emphasis added).

**6.** Interestingly, Revised Article 9 no longer specifies the need for a description of the land upon which crops are to be grown. *See* 12A O.S. § 1–9–203. The Oklahoma Comments to § 1–9–203 also note this change regarding creation of a security interest in crops.

Season" in a financing statement was a sufficient description under 12A O.S. § 9–402.[7] The Oklahoma Supreme Court concluded it was not sufficient "since ... [§ 9–402] expressly provides that a financing statement covering crops growing must contain a description of the real estate concerned and we find it mandatory." *Id.* at 266.

The Bank attempts to distinguish *Calvin Pickle Co.* because there the lender sought to recover from a third party. However, the analysis in *Calvin Pickle Co.* that the requirement of a description of the land is mandatory applies also in the present case. Here, there was absolutely no description of any land upon which crops were to be grown. Therefore, it failed to create a security interest in favor of the Bank in crops.

■ The Bank also points to three mortgages executed by the Defendants that do contain the legal descriptions of the land. These mortgages further describe the pledged collateral as all "appurtenances" to the described land. (*See* Ex. 2, 3, & 11.) According to the Bank, this reference to "appurtenances" includes the crops growing on the described land.[8]

The Bank misapprehends the applicable law, for the U.C.C. governs security interests in growing crops, not the law of real estate. White & Summers, *Uniform Commercial Code,* § 21–7, 949 (3rd ed.1988), explains:

> Crops are also "close" to realty. According to 2–107 and 9–105(h) crops are

goods. To create a security interest in crops the parties must comply with Article Nine rules on creation and perfection. A real estate mortgagee cannot subject crops to his mortgage merely by complying with real estate mortgage law.

A leading treatise on secured transactions reaches this same conclusion. It further explains that:

> Although interests in real estate are excluded from Article 9 by § 9–104(j), "crops" are brought back within the scope of Article 9 by definition. Therefore, the real estate mortgagee should be considered unperfected as to the crops. In other words, Article 9 is the *exclusive* statutory scheme to cover security interests in growing crops, and the mortgagee should not be able to claim a security interest under real estate law.

2 Barkley Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 8.05[1][a] at 8–37 (rev. ed.2000) (emphasis original).

The Court of Appeals for the Eighth Circuit reached the same conclusion in *United States v. Newcomb,* 682 F.2d 758 (8th Cir.1982). In that case, the federal government, which held a perfected security interest in a soybean crop, brought an action to recover damages for conversion against the mortgagee of farmland who had foreclosed on the farmland and the soybean crop growing on it. The mortgag-

**7.** The *Calvin Pickle Co.* case involved the description of the collateral on a financing statement which was covered by 12A O.S. § 9–402. However, the analysis of what constitutes an adequate description of collateral in a financing statement and a security agreement are fundamentally the same. Both § 9–203 and § 9–402 require the description of the real estate upon which crops are growing or are to be grown.

**8.** The Bank cites several pre-U.C.C. cases for the proposition that growing crops are personal property that pass with the land by conveyance unless there is a specific reservation or exception. *See Wire v. Slocum,* 80 Okla. 111, 194 P. 1061, 1062 (1921). However, these cases are pre-U.C.C. and, as noted above, are inapplicable in this case.

ee argued that Missouri real estate law, which provided that growing crops pass with the land unless severed, was the applicable law. The Eighth Circuit disagreed and held that the mortgagee did not have a security interest in the soybean crop since he did not comply with Article 9.

In sum, Article 9 governs creation and perfection of a security interest in crops, not real estate law. *See id. See also, Moritz Implement Co., Inc. v. Matthews,* 265 Kan. 179, 959 P.2d 886 (1998)(following reasoning in *Newcomb* and providing an excellent discussion on the jurisprudence on this issue).

The reference in the Bank's real estate mortgages to "appurtenances" does not create a security interest in Mr. Ellis's crops. Moreover, the only security agreement that purports to grant the Bank a security interest in crops is Exhibit 9, and as outlined above, Exhibit 9 does not satisfy the requirements of § 9–203(1)(a).

■ Thus, as a matter of law, the Bank has no security interest in Mr. Ellis's crops, and there is no genuine issue of material fact of whether the Bank held a valid security interest in the crops.

Accordingly, to the extent that the Bank's claim under § 523(a)(6) for a "willful and malicious" injury is premised on an injury to its alleged property rights in Mr. Ellis's crops and/or crop proceeds, the Court must grant summary judgment in favor of Mr. Ellis, for the Bank had no valid security interest for Mr. Ellis to injure.

### C. Claim Under § 523(a)(6): Cattle and Cattle Proceeds

■ Mr. Ellis also seeks summary judgment on the § 523(a)(6) claim as it relates to cattle. Mr. Ellis contends that the Bank has no security interest in his interest in cattle, and the Bank objects.[9] The Bank points to Exhibit 1, a security agreement dated May 1995, to support its assertion that it has a security interest in cattle.

Among the collateral in which Mr. Ellis gave the Bank a security interest were "10 donkeys (Miniature)." (Ex. 1.) Exhibit 1 further provides that, "If the property I have pledged includes livestock, I grant to the Bank a security interest in all increases in *that* livestock . . . ." (Ex. 1) (emphasis added). The Bank argues that this last provision granted it a security interest in *all* livestock and proceeds from livestock owned by Mr. Ellis, including cattle and proceeds from the cattle.

In other words, he expressly granted the Bank a security interest in ten donkeys, which is livestock, and by virtue of this last provision also granted it a security interest in all livestock, including cattle.

The Bank's argument is clearly overreaching. This last provision patently refers not to all livestock owned by Mr. Ellis, but rather, it refers to "that livestock" pledged as collateral, namely the 10 donkeys. Thus, the plain meaning of Exhibit 1 does not grant the Bank a security interest in cattle, although it does grant it a security interest in the 10 donkeys and increases from the donkeys. The language cited by the Bank in Exhibit 1 does not reasonably identify the cattle such that a third party could ascertain that they would be subject to a security interest. *See In re Shirel,* 251 B.R. at 162.

The Court must hold that this provision of Exhibit 1 was insufficient to create a security interest in any livestock other

---

**9.** The Bank asserts, without supporting affidavit or other documents, that Mr. Ellis's interest in the cattle was not ownership but was an interest for growth or fattening of the cattle.

than the 10 donkeys.[10]

The Bank also claims it holds a security interest in the proceeds from the sale of cattle by virtue of a security agreement dated January 9, 1998 ( Exhibit 9), which grants the Bank a security interest in "All general intangibles." The issue is whether reference to "all general intangibles" includes the proceeds from the sale of cattle in which the Bank held no security interest. Exhibit 9 defines the subject collateral of the security agreement to include:

**Collateral.** The word "Collateral" means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

**All general intangibles and crops**

In addition, the word "Collateral" includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

\* \* \* \* \* \*

(c) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section or appurtenant to any of the lands or operations of Grantor, or held in gross, whether in cash, farm products, or otherwise, and whether from or through any federal or state government agency or program . . . .

(Exhibit 9.)

Citing only general authority that collateral must be adequately described to create a security interest, Mr. Ellis contends that this language does not adequately describe the proceeds from the sale of cattle

in order to create a security interest. Without citing any authority, the Bank argues, "It is undeniable that monies from the sale of cattle falls within the definition of 'general intangibles.'" Consequently, asserts the Bank, it has "a secured interest in any monies arising from the sale of cattle in which Mr. Ellis held any interest." (Pl.'s Resp. to Mr. Ellis's Mot. for Partial Summ. J. at 11.)

Local Rule 9013(b) expressly requires a motion to be accompanied by a brief. Although Mr. Ellis has cited some authority, it is only general in nature. The Bank cites no authority. In such case, the parties are deemed to have waived the issue from the Court's consideration. The Court will not consider the merits of the request for summary judgment because the Court has not been briefed on the issue. Numerous courts take this position. *See Solow v. American Airlines, Inc. (In re Midway Airlines, Inc.)*, 221 B.R. 411 (Bankr.N.D.Ill.1998)(stating that "failure to cite authorities in support of a particular argument constitutes a waiver of the issue."); *Bullock v. Roost (In re Gold Key Properties, Inc.)*, 119 B.R. 787, 792 (Bankr.Or.1990)("Neither party has briefed that subject in the cross-motions for summary judgment, therefore, resolution of the issue is not appropriate at this time."); *French v. United States (In re French)*, 255 B.R. 1, 2 (Bankr.N.D.Ohio 2000)(court abstained from ruling on a particular issue because the statute involved was new and the issue was not fully briefed); *Fleming v. I.R.S. (In re Fleming)*, 1999 WL 718585, \*5 (Bankr.D.Mass.)(renewed motion for summary judgment denied when issue not briefed); *Coal Stripping, Inc. v. Clarendon Nat'l Ins. Co. (In re Coal Stripping,*

10. Also, Exhibit 1 does not give the Bank a security interest in the proceeds from the sale of Mr. Ellis's cattle since Exhibit 1 did not grant it a security interest in the cattle in the first place.

*Inc.),* 222 B.R. 78, 79 (Bankr.W.D.Pa. 1998)(court declined to address issue that was not briefed); *In re Atlantic Container Corp.,* 133 B.R. 980, 984 n. 4 (Bankr. N.D.Ill.1991)(same); *and IEG, Inc. v. Inst. Place Assocs. (In re Inst. Place Assocs.),* 1995 WL 137308, *3 (Bankr.N.D.Ill.)(denying portion of motion that was not briefed).

Thus, the Court must deny Mr. Ellis's motion concerning whether the Bank has a security interest in the cattle proceeds. This last issue remains for trial, and the Bank will have the burden to show it had a security interest in the proceeds from the sale of Mr. Ellis's cattle, even though it had no security interest in the cattle as a matter of law.

### II. Mrs. Ellis's Motion for Summary Judgment

Mrs. Ellis filed her own motion for summary judgment. She seeks summary judgment on each claim. The Bank objects. For reasons explained below, the Court grants summary judgment in her favor and dismisses the complaint as to her.

#### A. Claim Under § 523(a)(2)

Mrs. Ellis first moves for summary judgment on the claim under § 523(a)(2) because she asserts she did not make any representations, fraudulent or otherwise, to the Bank. The Bank concedes that it had no dealings with Mrs. Ellis, but it argues that Mr. Ellis was acting on behalf of Mrs. Ellis when he made unspecified false representations to the Bank.[11]

■ The Bankruptcy Code provides that a debt may be excepted from discharge for:

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2). To prevail under § 523(a)(2)(A), the Bank must satisfy the following elements by a preponderance of the evidence: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied on the representation; (4) the creditor's reliance was justifiable; and (5) the debtor's representation caused the creditor to sustain a loss. *See Chevy Chase Bank v. Kukuk (In re Kukuk),* 225 B.R. 778, 784 n. 5 (10th Cir. BAP 1998). In contrast to § 523(a)(2)(B), the reliance that the Bank must show is the lower standard of justifiable reliance. *See Field v. Mans,* 516 U.S. 59, 74–5, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)(holding that justifiable reliance, as opposed to the higher standard of reasonable reliance, must be shown).

■ Although the Bank contends that Mr. Ellis was acting on behalf of Mrs. Ellis, essentially that he was her agent, it offers no evidentiary support for this contention in opposition to her motion for summary judgment. The Court of Appeals for the Tenth Circuit has stated:

Summary judgment is appropriate when the materials submitted to the court "show that there is no genuine issue as to any material fact and that the mov-

11. It is unclear what the exact nature of the alleged misrepresentations are. However, the Bank makes allegations in its response to Mrs. Ellis's motion for summary judgment on page 4 that land pledged to the Bank was owned by Mrs. Ellis and that she diverted funds owed to the Bank. These allegations are wholly unsupported by any affidavit or other supporting evidence. Consequently, they are not considered herein. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

ing party is entitled to judgment as a matter of law." What facts are material depends on the substantive law being applied. Although we view the evidence in the light most favorable to the party opposing summary judgment, disputes about immaterial facts will not preclude summary judgment. Should a non-moving party make some showing on a material issue, we must consider the standard of proof in the case (here, a preponderance of evidence) and decide whether the showing is sufficient for a reasonable trier of fact to find for the non-moving party on that issue. A scintilla of evidence in favor of the non-moving party is not enough to preclude summary judgment. *Moreover, should a non-moving party not make a sufficient showing on any essential element of his case, all other facts are rendered immaterial, and summary judgment is appropriate.*

*Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir.1989) (citations omitted) (emphasis added). Having reviewed all the supporting materials, the only conclusion is that none of the papers submitted corroborates the Bank's contention.

There are cases in which a spouse has been denied a discharge due to the actions of the other spouse. However, in those cases, there is generally some business relationship in addition to a marital relationship. *See Love v. Smith (In re Smith)*, 98 B.R. 423 (Bankr.C.D.Ill.1989)(holding that wife's debt was non-dischargeable due to husband's fraudulent actions where she held the dealership license and her signature

was required on all business checks); *and Luce v. First Equip. Leasing, Inc. (In re Luce)*, 960 F.2d 1277, 1284 n. 10 (5th Cir.1992)(noting that it was the debtors' business relationship, not their marital one, that imputed the husband's fraud on the wife). A mere marital relationship is not sufficient to impute the actions of one spouse to another. *See id. See also, Myers v. Ostling (In re Ostling)*, 266 B.R. 661, 665 (Bankr.E.D.Mich.2001)(noting that more than a marital relationship is required); *and Agribank v. Gordon (In re Gordon)*, 293 B.R. 817, 823 (Bankr. M.D.Ga.2003)(same).

Here, there are only unsupported allegations that Mr. Ellis was acting on behalf of his wife. Thus, the only basis for holding Mrs. Ellis liable for Mr. Ellis's alleged fraud is their marital relationship, and this is insufficient as a matter of law.

Therefore, the Court must grant summary judgment in favor of Mrs. Ellis on the § 523(a)(2) claim.

**B. Claim Under § 523(a)(4)**

The Court must also grant Mrs. Ellis summary judgment on the § 523(a)(4) claim for the same reasons as stated above for her husband, the lack of a fiduciary relationship within the meaning of § 523(a)(4).[12]

**C. Claim Under § 523(a)(6): Crops and Crop Proceeds/Payments**

Mrs. Ellis is also entitled to summary judgment on the portion of the claim under § 523(a)(6) regarding crops and crop pro-

12. From the documents submitted by the Bank it appears that Mrs. Ellis only signed Exhibits 2 and 3, which are real estate mortgages. Only her husband signed the remaining documents. The Bank's response to her motion for summary judgment refers to an Exhibit 14. However, the record does not contain Exhibit 14, and it is not considered herein. Moreover, the Court must grant summary judgment for her on the § 523(a)(4) as a matter of law for the same reasons described above for her husband.

ceeds/payments for the same reasons explained above for her husband.

### D. Claim Under § 523(a)(6): Cattle and Cattle Proceeds

Finally, Mrs. Ellis is entitled to summary judgment on the portion of the claim under § 523(a)(6) regarding cattle and cattle proceeds.

First as explained above, the Bank claims a security interest in cattle by virtue of a security agreement dated May 1995 (Exhibit 1). Exhibit 1 was not signed by Mrs. Ellis; therefore, she did not grant the Bank an interest in cattle by Exhibit 1. Section 9–203(1)(a) expressly requires the signature of the debtor on a security agreement before there is a valid security interest. *See* § 9–203(1)(a).[13] More importantly, as explained above for Mr. Ellis, Exhibit 1 does not grant the Bank any security interest in cattle.

Next, the Bank contends that it has a security interest in cattle proceeds by virtue of a security agreement dated January 9, 1998 (Exhibit 9). This too was not signed by Mrs. Ellis, and it cannot serve as grounds for her granting the Bank a security interest in cattle proceeds. *See id.*

Because the Bank has failed to demonstrate a genuine issue of material fact that Mrs. Ellis granted it a security interest in the cattle or cattle proceeds, the Court must grant summary judgment in favor of Mrs. Ellis.

### Conclusion

Accordingly, the Court:

1. Grants summary judgment in favor of Mr. Ellis on the § 523(a)(4) claim in its entirety;

2. Grants summary judgment in favor of Mr. Ellis on the portion of the claim under § 523(a)(6) regarding crops and crop proceeds/payments;

3. Grants summary judgment in favor of Mr. Ellis on the portion of the claim under § 523(a)(6) to the extent it is based on an alleged security interest in cattle pursuant to the security agreement dated May 1995 (Exhibit 1);

4. Denies summary judgment in favor of Mr. Ellis on the portion of the claim under § 523(a)(6) regarding an alleged security interest in cattle proceeds pursuant to a security agreement dated January 9, 1998, (Exhibit 9) since this issue was not adequately briefed; and

5. Grants summary judgment in favor of Mrs. Ellis on all claims, and the complaint is dismissed as to her.

The only claims remaining for trial are the § 523(a)(2) claim against Mr. Ellis and the portion of the § 523(a)(6) claim against Mr. Ellis relating to cattle proceeds. No claims remain for trial against Mrs. Ellis. A separate scheduling order will follow.

---

13. For language of § 9–203(1)(a), please see footnote 5, *supra.*